UNITED STATES of America, Appellee,

v.

Terrell L. THOMPSON, Appellant.

No. 99–3120.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 3, 2000.

Decided Dec. 22, 2000.

Beverly G. Dyer, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A. J. Kramer, Federal Public Defender. Tony W. Miles, Assistant Federal Public Defender, entered an appearance.

Marc E. Rindner, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher and Roy W. McLeese, III, Assistant U.S. Attorneys.

Before: GINSBURG, RANDOLPH, and GARLAND, Circuit Judges.

Opinion for the court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The question before the court is whether the district court properly admitted evidence police obtained from a search of the appellant. The district court held that the police had reasonable suspicion to search the appellant because they had received an anonymous tip that he was carrying a gun — the possession of which is unlawful in the District of Columbia — and because the tip was corroborated to the extent of certain details, which were in themselves innocent. The Supreme Court subsequently held that a search based upon an anonymous tip, only innocent details of which have been corroborated, is not reasonable and the evidence it produces is not admissible. *Florida v. J.L.*, 529 U.S. 266, ———-———, 120 S.Ct. 1375, 1379–80, 146 L.Ed.2d 254 (2000).

We nonetheless affirm the judgment in this case because uncontradicted evidence in the record shows that the tip at issue bore indicia of reliability not present in *J.L.* and because the defendant's conduct itself gave the police reasonable cause to suspect that he was engaged in unlawful activity. We remand the case to the district court for resentencing, however, at the request of both parties.

## I. Background

The facts surrounding the search of Terrell Thompson were established at an evidentiary hearing and are not in dispute. At around 3:20 a.m. Officers Holloway and Pope of the Metropolitan Police Department had just completed a traffic stop near the intersection of "I" and Half Streets, S.E. Officer Holloway was in uni-

form, standing near his marked cruiser with Officer Pope when a middle-aged, Black man traveling southbound on Half Street drove up to them.

The motorist told the officers that he "just saw" a man carrying a gun get out of a sport-utility vehicle in the parking lot of a Wendy's restaurant some 100 yards from where the officers stood. The informant, who was anxious and agitated, described the suspect as a young Black man wearing dark pants and a bright orange shirt. The officers accepted what he said as likely true and neither requested nor acquired specific information identifying him.

Officers Holloway and Pope then drove in their separate cars to the Wendy's, which was closed. As the two officers entered the parking lot from "K" Street, they saw a darkcolored sport-utility vehicle leaving the lot. Because the officers had been told the suspect had exited the vehicle, however, they did not stop it. Officer Holloway then saw a Black man, who turned out to be Thompson, wearing a bright orange shirt and standing by himself at the far end of the parking lot with his back against a fence. There was no one else in the parking lot. Thompson was looking around the edge of the fence toward a nightclub called the Mirage. He was, the district court found, "sort of peeking around as if he was trying to keep his position concealed."

Fearing, based upon the tip, that Thompson was armed, Officer Holloway exited his cruiser with his weapon drawn and approached Thompson. Thompson spotted Officer Holloway over his left shoulder when Holloway was within five to seven feet of him. Thompson stepped away from the fence and, without trying to flee, took five steps toward "I" Street. Holloway instructed him to raise his hands in the air and to stop, and Thompson complied. Thompson at that point said something to the effect of "you got me" and indicated that he would not put up a fight. At Holloway's instruction he dropped to his knees. As Holloway assist-ed him to the ground, the officer felt a weapon toward the front of Thompson's person. At that point Officer Pope arrived and helped to handcuff Thompson. The two officers then rolled Thompson over and retrieved a nine-millimeter semiautomatic pistol, loaded and cocked, that was sticking out of his waistband.

A federal grand jury indicted Thompson for unlawful possession of a firearm by a convicted felon. The district court denied Thompson's motion to suppress the gun and certain statements he made to the police, ruling that the anonymous tip together with certain corroborating details, such as Thompson's attire, race, sex, and location, gave the police reasonable ground to suspect that Thompson had a gun. Thompson then entered a conditional plea of guilty, reserving his right to appeal the court's denial of his motion to suppress. The court sentenced Thompson to 37 months in prison, reflecting a two-point enhancement under the United States Sentencing Guidelines for possession of a stolen weapon.

Thompson initially filed a notice of appeal challenging only his sentence, but he has since filed an unopposed motion to add the suppression issue in light of the decision of the Supreme Court in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254.

## II. Analysis

Under the Fourth Amendment to the Constitution of the United States, the police may not stop and search a person unless they have reason to suspect he is engaged in wrongdoing. *See Terry v. Ohio*, 392 U.S. 1, 27–28, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (police may stop and frisk persons walking up and down street and peering into window of store, apparently casing it for robbery). As applied to the facts of this case, the fourth amendment requires that Officer Holloway have had a "reasonable fear for his own or

others' safety" before frisking Thompson. *Id.* at 30, 88 S.Ct. 1868.

▮ Specifically, "[t]he officer ... must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868). Whether that standard is met must be determined "'from the standpoint of an objectively reasonable police officer,'" without reference to "the actual motivations of the individual officers involved." *United States v. Hill,* 131 F.3d 1056, 1059 (D.C.Cir.1997) (quoting *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

In this case the district court determined that Officer Holloway had reasonable suspicion to search Thompson based upon the tip he got from the motorist and the corroboration of certain of the details of that tip:

> [A]n anonymous tip from an anonymous citizen can be the basis for a *Terry* stop provided that there is some corroboration to provide the police officers with legitimate reasons to believe that the tip was reliable. And the cases have held that the corroboration can be that when they go to the scene they're confronted with what the tipster told them he saw. And so the corroboration in this case ... is exactly what the Government says it is. The citizen tipster said black male, bright orange shirt, blue jeans or dark pants. And he's in a parking lot at Wendy's .... And he's got a gun .... They [then] found what they were told they were going to find.

The district court's reasoning was based solidly upon the holdings of this court in *United States v. Clipper,* 973 F.2d 944, 947–51 (1992), and *United States v. McClinnhan,* 660 F.2d 500, 502–03 (1981), in which we deemed the same type of combination sufficient to support a stop and frisk.

The decision of the Supreme Court in *Florida v. J.L.* casts new light upon this recurring situation. In that case an anonymous caller had told the Miami–Dade police that a young Black man, standing at a particular bus stop and wearing a plaid shirt, had a gun. When the police went to investigate they saw three Black males there, one of whom, 15 year-old J.L., was wearing a plaid shirt. Upon frisking him, the police discovered a gun. *See* 529 U.S. at ——, 120 S.Ct. at 1377.

The Supreme Court, upon those facts, held that the police did not have reason to believe that the suspect had an illegal firearm nor, hence, reason to stop and frisk him. *Id.* at ——, 120 S.Ct. at 1380. The police cannot rely upon "the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the suspect]." *Id.* at ——, 120 S.Ct. at 1379. The Court dismissed the argument that "the tip was reliable because its description of the suspect's visual attributes proved accurate: There really was a young black male wearing a plaid shirt at the bus stop." The Court explained that "[s]uch a tip ... does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* Finally, the Court rejected any suggestion that the putative possession of a firearm, and the danger that poses, might alter the inquiry into reasonable suspicion. *Id.* at —— ——, 120 S.Ct. at 1379–80.

▮ Thus, the Supreme Court has now rejected the district court's reasoning in admitting the evidence against Thompson. Ordinarily we would remand for further proceedings a case in which the district court did not "ask[ ] the right legal questions in making its ruling," *United States v. Williams,* 951 F.2d 1287, 1291 (D.C.Cir.1991); to do so here is unnecessary, however, because uncontested facts

in the record still warrant our affirming the ruling. *See United States v. Caballero*, 936 F.2d 1292, 1297 (D.C.Cir.1991). The tip in this case bears indicia of reliability beyond those of the anonymous tip in *J.L.*; and the police themselves observed Thompson engaging in suspicious conduct.

First, the tipster here informed the police in person, making his report inherently more trustworthy than that of the unidentified caller in *J.L.* The informant stated that he "just saw" Thompson, indicating that his knowledge was based upon firsthand observation, *see Illinois v. Gates*, 462 U.S. 213, 234, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); the recency and the proximity of his claimed observation further suggested that it would prove accurate, *see Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

In addition, the informant in this case was more accountable, and therefore more reliable, than was the anonymous caller in *J.L.* The precise situation here was anticipated by Justice Kennedy, concurring in *J.L.*:

> If an informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip. An instance where a tip might be considered anonymous but nevertheless sufficiently reliable to justify a proportionate police response may be when an unnamed person driving a car the police officer later describes stops for a moment and, face to face, informs the police that criminal activity is occurring.

529 U.S. at ——, 120 S.Ct. at 1381. The informant in this case subjected himself to ready identification by the police when he approached them in his car; the police need only have asked for his identification or simply noted the license plate on his car. *Cf. United States v. Valentine*, 232 F.3d 350, 352, 354 (3d Cir.2000) (face-to-face tip supports reasonable suspicion, notwithstanding informant's refusal to

identify himself, in light of informant's accountability and claimed immediate, firsthand basis for knowledge). Had the information he provided proved false, he would have been subject to potential criminal prosecution. *See* D.C.CODE ANN. § 4–151 (misdemeanor to "make or cause to be made to the Metropolitan Police ... a false or fictitious report of the commission of any criminal offense").

Thompson argues that the ability of the police to identify an otherwise anonymous telephone caller and the prospect of a prompt police response make the anonymous caller in *J.L.* no less accountable than the face-to-face informant in this case. For this he relies upon Justice Kennedy's observation in his separate opinion, that as their technology improves, "the ability of the police to trace the identity of anonymous telephone informants may be a factor which lends reliability to what, years earlier, might have been considered unreliable anonymous tips." 529 U.S. at ——, 120 S.Ct. at 1381. Justice Kennedy's point, however, is not that face-to-face tips lack the requisite reliability but that even anonymous calls might one day have it.

Second, what the police themselves observed of Thompson's conduct was clearly suspicious. Although the district court erroneously relied upon innocent corroborating details in upholding the search, it also found, based upon undisputed police testimony, that the officers observed Thompson concealing himself behind the fence and peering out toward the street. Moreover, he was doing so in the parking lot of a closed restaurant at three o'clock in the morning.* Reviewing these facts objectively, that is, from the perspective of a reasonable police officer, Thompson's apparent effort to conceal himself behind the fence must be regarded as suspicious, much as was the defendants' apparent casing of the store in *Terry*. *See* 392 U.S. at 28, 88 S.Ct. 1868. Thompson's furtive conduct was not merely consistent with the tip that he had a weapon; it would have sig-

---

\* We disregard Officer Holloway's observation that Thompson "looked like he was going to shoot someone" because Holloway also testi-

fied that his belief that Thompson had a gun was based solely upon the tip, as opposed to Thompson's own conduct.

naled a reasonable police officer that Thompson was positioning himself to use it, perhaps against someone exiting the nightclub toward which he was looking. To ask more of the police in these circumstances — to require them to investigate still further or to watch from a distance — might well preclude them from interceding before the suspect has accomplished his violent, perhaps lethal, purpose. The requirement of reasonable suspicion does not necessitate such forbearance.

## III.  Conclusion

For the foregoing reasons, we affirm Thompson's conviction.  We also vacate his sentence, however, because as the Government concedes, the evidence does not support the conclusion that the gun he had was stolen.  This matter is therefore remanded to the district court for resentencing consistent with the opinion.

*So ordered.*