**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Rodney Tyrone JONES, Defendant–
Appellant.**

**No. 99–4201.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 25, 2001.

Decided March 1, 2001.

**ARGUED**: Henry Jerome Mims, The Mims Law Firm, Greer, SC, for Appellant. Beth Drake, Assistant United States Attorney, Columbia, SC, for Appellee. **ON BRIEF**: J. Rene Josey, United States Attorney, Harold Watson Gowdy, III, Assistant United States Attorney, Greenville, SC, for Appellee.

Before WIDENER, MICHAEL, and MOTZ, Circuit Judges.

OPINION

MICHAEL, Circuit Judge:

Rodney Jones appeals his conviction for possessing with intent to distribute cocaine base (crack cocaine) in violation of 21 U.S.C. § 841. Jones moved to suppress the crack on the ground that it was discovered by the police during the illegal stop of an automobile occupied by Jones and three other African American men. The race of the occupants prompted a city police officer to make the stop shortly after police had been unable to corroborate an anonymous tip that "several black males" were causing a disturbance at a certain intersection. The district court denied the suppression motion and admitted the crack cocaine into evidence. Because the tip proved to be unreliable and the driver of the car was obeying the rules of the road, the stop violated the Fourth Amendment, and the crack should have been excluded from Jones's trial. We therefore vacate his conviction.

I.

Union, South Carolina, is a city of about 10,000 people, nearly forty percent of whom are African American. Sometime before 1:13 a.m. on March 17, 1998, the police dispatcher in Union received an anonymous 911 call. The caller complained that "several black males" were drinking beer and causing a disturbance in the roadway at the intersection of Lybrand and Pond Streets. Aside from mentioning their race, the caller did not provide any physical description of the men and did not say whether they were in or near a vehicle. The dispatcher did not intrude upon the caller's anonymity or press the caller for any details. At 1:13 a.m., acting on this anonymous tip, the dispatcher radioed City Officer Rickey Mallet, asking that Mallet investigate the reported disturbance. Officer Claude Hart, who happened to be near the intersection in a separate police car, also responded to the dispatcher's call. Each officer approached the intersection from a different direction. When they arrived at the scene, the officers did not find anyone or see any signs of a disturbance. After scouting the neighborhood in and around the intersection, the officers confirmed that the area was clear.

The officers then departed, and after Officer Hart had traveled about two-tenths of a mile, he met a white Chevrolet coming into the area. The driver of the car was not committing any traffic infractions, and there were no signs of any other violations. Officer Hart noticed, however, that there were four Africa American men in the Chevrolet. Solely because the earlier call to the dispatcher had mentioned several black males, Hart decided to stop the car. Hart quickly made a U-turn, switched on his blue lights, and the driver of the Chevrolet pulled over and stopped. Officer Mallet arrived moments later to assist Hart. Hart went to the driver's window and asked the driver for his license, registration, and insurance information. While Officer Hart was waiting for the documents, he noticed an open bottle of beer at

the feet of the passenger in the front seat. After the driver, Jamel Good, produced his documents, Officer Hart asked Good to step out of the car, and he complied. Hart then mentioned the open bottle of beer and obtained Good's consent to search the car. Hart ordered the passengers, including the front-seat passenger, Rodney Jones, to get out of the vehicle. Hart then searched the front passenger area and found two open beer bottles. After he recovered the bottles, Hart placed Jones under arrest for violating South Carolina's open container law. *See* S.C.Code Ann. § 61–4–110. While Hart was handcuffing Jones, Officer Mallet patted him down. As he felt the front of Jones's jacket, Mallet heard a "crinkling" sound. Mallet checked the front jacket pocket and found a plastic bag that contained 23.92 grams of crack cocaine, according to subsequent laboratory analysis.

Jones was indicted in April 1998 and charged with possession with intent to distribute crack cocaine. *See* 21 U.S.C. § 841. Jones's first trial ended in a hung jury. At his second trial he moved to suppress the crack cocaine that Officer Mallet discovered on the ground that it was the fruit of an unlawful stop. The district court denied the motion, and the jury returned a guilty verdict. Jones appeals his conviction, challenging only the denial of his suppression motion.

## II.

The Fourth Amendment protects "persons" from "unreasonable searches and seizures." U.S. Const. amend. IV. A discretionary automobile stop by the police is a seizure of the person and therefore " 'must be justified by … a reasonable suspicion, based on specific and articulable facts, of unlawful conduct.' " *United States v. Wilson*, 205 F.3d 720, 722–23 (4th Cir.2000) (quoting *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir.1993)). Rea-

sonable suspicion, of course, is "more than an 'inchoate and unparticularized suspicion or "hunch" of criminal activity.' " *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In this case, we must determine whether the anonymous tip to 911 together with Officer Hart's observations of the white Chevrolet provided reasonable suspicion to justify his investigative stop of the car.

Recently, in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the Supreme Court revisited the issue of when an anonymous tip may provide reasonable suspicion for an investigative stop.[1] In *J.L.* the Court suppressed a handgun that the Miami Dade Police had seized from an African American juvenile who was stopped and frisked on the basis of an anonymous tip. The police had received an anonymous telephone tip that a young African American male in a plaid shirt standing at a certain bus stop was carrying a gun. The police went to the bus stop and found three African American males, one of whom was wearing a plaid shirt. Aside from the tip, the police did not have any reason to suspect any of the three men of unlawful activity. The officers did not see a firearm, and the men did not make any moves that were threatening or unusual. One of the officers stepped up to the young man with the plaid shirt, frisked him, and recovered a gun from his pocket. *See id.* at 270, 120 S.Ct. 1375.

The Court held unanimously that the stop and frisk violated the juvenile's Fourth Amendment rights. The Court acknowledged that "there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.' " *Id.* (quoting *Alabama v. White*, 496 U.S. 325, 327, 110 S.Ct.

---

1. The district court in this case did not have the benefit of *J.L.* when it denied Jones's motion to suppress.

2412, 110 L.Ed.2d 301 (1990)). The Court nevertheless concluded that this tip lacked the necessary indicia of reliability. According to the Court, the tip "provided no predictive information and therefore left the police without means to test the informant's credibility or knowledge." *Id.* at 271, 120 S.Ct. 1375. The police improperly relied on "the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the juvenile]." *Id.* Although the tip was reliable in the limited sense that it accurately described the juvenile's clothing and location, the Court held that the tip was insufficient to establish reasonable suspicion. The Court noted that reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* at 272, 120 S.Ct. 1375. Thus, because the police could not verify the informant's credibility and they had no reason to suspect the juvenile of unlawful behavior apart from the tip, the Court held that the stop was unjustified and that the gun was the fruit of an unlawful search. *See id.* at 274, 120 S.Ct. 1375.[2]

The anonymous tip in this case, like the one in *J.L.*, lacks sufficient indicia of reliability. In fact, the tip here was so barren of detail about the alleged culprits' physical descriptions that it was even less reliable than the deficient tip in *J.L.* The 911 caller told the Union police dispatcher that several black males were drinking and causing a disturbance at a certain intersection. The caller said nothing else. Specifically, he did not identify himself, did not give his location or vantage point, and did not explain how he knew about the disturbance. The tipster did not say exactly how many men were present, and apart from mentioning their race, gave no information about their appearance. The caller did not mention whether the men were residents of the neighborhood or outsiders. Finally, he did not say whether the men were in an automobile or whether they had access to one. Union police went to the intersection and saw no one. They undertook an inspection of the immediate area and still found no one and saw no signs that there had been a disturbance. At that point, the anonymous tip was totally uncorroborated. *Cf. United States v. Thompson,* 234 F.3d 725, 729–30 (D.C.Cir. 2000) (holding that stop and frisk was supported by reasonable suspicion because anonymous tip was corroborated when "the police themselves observed [the defendant] engaging in suspicious conduct"); *United States v. Perrin,* 45 F.3d 869, 872 (4th Cir.1995) (recognizing that an informant's tip can provide the justification for an investigative stop if the information in the tip is sufficiently corroborated).

In this case, the anonymous tip became essentially useless once the police found no one and no illegal activity at the intersection. If the police wished to investigate any further, they were relegated to looking for several African American men, who had not been described or otherwise identified. Indeed, as Officer Hart admitted, when he met the white Chevrolet two-tenths of a mile from the empty intersection, he "saw four black guys ... and stopped them for that." Officer Hart saw no traffic or equipment violations or any suspicious activity. He stopped the car simply because the earlier, uncorroborated tip mentioned several black men. Because Officer Hart had not been able to confirm the 911 "informant's knowledge or credibility," *J.L.,* 529 U.S. at 271, 120 S.Ct. 1375, the tip was not a reliable accusation against the men in the white Chevrolet. In short, the uncorroborated tip and Officer Hart's sighting of four African American men in a car were insufficient to estab-

---

**2.** The Court in *J.L.* was careful to note that the facts of the case did "not require [it] to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability." *J.L.,* 529 U.S. at 274, 120 S.Ct. 1375.

lish reasonable suspicion for a stop. The stop was therefore illegal, and the crack cocaine that Officer Mallet discovered during his search of Jones should have been excluded at trial. Jones's judgment of conviction is therefore vacated, and the case is remanded for any further proceedings that would be consistent with this opinion.

*VACATED AND REMANDED.*