**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jonathan DOTSON, Defendant– Appellant.**

No. 03–4352.

United States Court of Appeals, Seventh Circuit.

Argued June 15, 2004.

Decided June 25, 2004.

Mark S. Massa, Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

William H. Dazey, Jr., William E. Marsh, Indianapolis, IN, for Defendant– Appellant.

Before POSNER, WOOD, and WILLIAMS, Circuit Judges.

ORDER

Shortly after an Indianapolis police officer received a tip from a bystander that defendant Jonathan Dotson, one of the participants in a public domestic dispute, had a gun, another officer pulled over Dotson in his car and found a gun underneath the front seat. Dotson moved to suppress the gun, but the district court denied the motion, and Dotson was later convicted

after a jury trial of possession of a gun by a felon. On appeal Dotson challenges the denial of his motion to suppress, arguing that the officers did not have the reasonable suspicion necessary for a lawful investigatory stop. Because we conclude that the circumstances taken as a whole supplied the necessary reasonable suspicion for the stop, we affirm.

## I

Our account of the facts is drawn from the police officers' testimony at the suppression hearing. Dotson does not challenge the particulars of their story. He argues only that the district court misapprehended the legal significance of these facts. On an afternoon in February 2003, police sergeant Butler was patrolling a neighborhood in Indianapolis. As Butler approached an intersection, he observed a group huddled around some people engaged in an apparent altercation. One of the latter individuals turned out to be Jonathan Dotson. It appeared to Sergeant Butler that a woman was attempting to restrain Dotson from assaulting another woman. Butler testified that he considered Dotson's involvement in the fight to be disorderly conduct.

Butler got out of his marked police car and approached the group, telling them to "knock it off." As he did so, the group scattered and Dotson, in particular, walked away toward a parked car, entered it, and drove off. Sergeant Butler asked the only remaining bystander what had happened. The bystander reported that it was a domestic dispute and that the man who had just driven off "has a gun." Another officer, Collins, arrived in a squad car, and Sergeant Butler yelled to him to stop the car leaving the scene because the driver had been involved in a fight and might be armed. Sergeant Butler testified that he did not get the bystander's name because

he immediately returned to his car to back up Officer Collins. Collins pursued Dotson's car at a high rate of speed for approximately four blocks. Collins eventually pulled over Dotson's car, patted down Dotson, and obtained identification from him. Dispatch reported that Dotson had a record of felony convictions and that the license plate on the car he was driving was registered to a different vehicle. Another officer who had arrived on the scene, Martin, handcuffed Dotson, read him the *Miranda* warnings, and retrieved a gun from under the driver's seat after Dotson told him it was there.

After the grand jury indicted Dotson on one count of possession of a firearm by a felon, 18 U.S.C. § 922(g), Dotson moved to suppress the gun as the fruit of an unlawful stop and search. After a hearing, the district court denied the motion, concluding in an oral ruling that the stop and search were justified by reasonable suspicion or probable cause based on four pieces of information: Dotson's disorderly conduct, Dotson's sudden departure from the scene, the tip from a bystander about Dotson having a gun, and improper plates on Dotson's car. Dotson was later found guilty by a jury and sentenced to 120 months' imprisonment.

## II

On appeal, Dotson presents only one challenge: that the district court erred in denying his motion to suppress because the only thing that supported the stop was the bystander's "anonymous tip," and under the Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), this is insufficient as a matter of law for a finding of reasonable suspicion. Dotson does not independently challenge the lawfulness of what happened after that stop, namely the search of his car and his eventual arrest.

Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), police officers are permitted under the Fourth Amendment to make an investigative stop of a vehicle and its occupants if the officers have reasonable suspicion that the occupants are involved in criminal activity. See, *e.g., United States v. Wimbush,* 337 F.3d 947, 949 (7th Cir.2003); *United States v. Spotts,* 275 F.3d 714, 718 (8th Cir.2002); *United States v. Jones,* 242 F.3d 215, 217 (4th Cir.2001). The reasonableness of a stop depends on the totality of the circumstances known to the officers at the time of the stop. *Wimbush,* 337 F.3d at 950. In reviewing a district court's decision on a motion to suppress, this court assesses *de novo* the question whether the officers had reasonable suspicion justifying the investigatory stop. *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

In *Florida v. J.L., supra,* the Supreme Court considered the question whether an anonymous telephone call, standing alone and without any other indicia of reliability, could suffice to establish the reasonable suspicion necessary to justify an investigatory stop. It concluded that such a tip was insufficient. But the outcome of *J.L.* is not controlling here, both because the Court itself was not addressing the reliability of a face-to-face tip, and because there are additional facts in Dotson's case that contribute to the finding of reasonable suspicion.

First, the nature of the tip that Sergeant Butler received about Dotson differs crucially from the tip received in *J.L.*—namely, in how it was delivered. The Supreme Court recognized in *J.L.* that "there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" 529 U.S. at 270, 120 S.Ct. 1375 (citation omitted). In *J.L.* police received an anon-

ymous telephone call that a man at a particular bus stop had a gun. *Id.* at 268, 120 S.Ct. 1375. In this case Sergeant Butler received a tip in person from an unidentified bystander that a man who had just been involved in an altercation had a gun. Although this court has never addressed specifically the reliability of a face-to-face tip from an unnamed person, other circuits have recognized that a tip delivered face-to-face, even from an unidentified person, is inherently more reliable than an anonymous tip delivered via telephone. *See United States v. Heard,* 367 F.3d 1275, 1278 (11th Cir.2004); *United States v. Holmes,* 360 F.3d 1339, 1343 (D.C.Cir. 2004); *United States v. Thompson,* 234 F.3d 725, 729 (D.C.Cir.2000); *United States v. Valentine,* 232 F.3d 350, 354 (3d Cir.2000); *United States v. Christmas,* 222 F.3d 141, 143–44 (4th Cir.2000). Justice Kennedy foreshadowed this distinction in his concurrence in *J.L.,* when he wrote:

> If an informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip. An instance where a tip might be considered anonymous but nevertheless sufficiently reliable to justify a proportionate police response may be when an unnamed person driving a car the police officer later describes stops for a moment and, face to face, informs the police that criminal activity is occurring. This too seems to be different from the tip in the present case.

529 U.S. at 276, 120 S.Ct. 1375 (Kennedy, J., concurring).

Distinguishing between the reliability of tips delivered face-to-face and those delivered via telephone makes sense for several reasons. First, when a tip is given in person, an officer can size up the credibility of the tipster by observing demeanor and asking questions. See *Heard,* 367 F.3d at 1279–80; *Holmes,* 360 F.3d at

1343; *Valentine,* 232 F.3d at 354; *Christmas,* 222 F.3d at 144. Second, the circumstances that an officer observes in conjunction with a face-to-face tip will usually explain how the tipster would have knowledge of the alleged criminal activity and indicate how fresh the information provided may be. See *Heard,* 367 F.3d at 1279–80; *Holmes,* 360 F.3d at 1343–44; *Thompson,* 234 F.3d at 729; *Valentine,* 232 F.3d at 354; *Christmas,* 222 F.3d at 144. Lastly, a tip delivered in person is likely more credible because the tipster is willing to reveal his identify, at least in part, by giving it. See *Holmes,* 360 F.3d at 1343; *Thompson,* 234 F.3d at 729; *Valentine,* 232 F.3d at 354; *Christmas,* 222 F.3d at 144. Having seen the person's face, the officer stands a good chance of finding him or her later—a fact (or risk) that is evident to the tipster as well.

Here, although Sergeant Butler did not think he had time to ask further questions before initiating pursuit of Dotson, Butler's quick action supports the inference that he found the bystander to be credible. See *Valentine,* 232 F.3d at 355. Furthermore, even though Butler did not get the bystander's name, Butler was in a position to use the bystander's appearance and location to track him down if the tip proved to be mistaken. See *Heard,* 367 F.3d at 1279–80 (finding face-to-face tip to be reliable even though unidentified tipster ran off after giving tip); *Holmes,* 360 F.3d at 1344 (explaining that not asking tipster for identification does not necessarily negate reliability of tip). It is true that the reliability of the tip might have been heightened if Butler had asked further questions or verified the bystander's identity, but the fact that it could have been even better does not mean that it was not good enough to give rise to reasonable suspicion of criminal activity.

This appeal might be a closer call if all the court had to consider in evaluating reasonable suspicion was the tip standing alone, but Dotson's conduct during and after the altercation also tends to corroborate the tip that Dotson had a gun. Sergeant Butler observed that Dotson was involved in a fight, and so it was reasonable for him to infer that Dotson might have been dangerous. More notably, Dotson's immediate exit from the scene when a police officer arrived and his high-speed chase with Officer Collins also corroborate the allegation that Dotson had something to hide. See *Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *Heard,* 367 F.3d at 1279–80 (explaining that suspect's adverse reaction to police may independently corroborate tip provided by anonymous informant); *Valentine,* 232 F.3d at 356–57 (holding that walking away from police is factor that can contribute to reasonable suspicion). The high speed chase in particular suggests that Dotson was not merely obeying a police directive to break up a relatively innocuous disturbance.

Finally, at oral argument counsel suggested that the police had no reason to think that the behavior of which Dotson was accused—having a gun—was criminal at all. On at least one occasion this court has speculated that a tip about mere gun possession (in a state that allows the carrying of concealed weapons) would not establish reasonable suspicion that the suspect was engaged in criminal activity. See *United States v. DeBerry,* 76 F.3d 884, 886–87 (7th Cir.1996). At the time of Dotson's stop, it appears that Indiana law permitted a person to carry a handgun so long as he or she had a license. See Ind.Code § 35–47–2–1(a) (2003). Even though the record does not reveal whether the bystander told Sergeant Butler what Dotson was doing with the gun, the context in which the report was made tends to

establish reasonable suspicion that Dotson was engaged in criminal activity even before the officers learned that he was a felon and had no license to carry the gun. Sergeant Butler had witnessed Dotson engaged in a physical altercation, the bystander reported that the fight was a domestic dispute, and Dotson had fled the scene upon the arrival of the police. Taken together, these circumstances sufficed to make it reasonable for the officers to infer that Dotson was engaged in some sort of criminal activity. We therefore AFFIRM the decision of the district court to deny Dotson's motion to suppress and the resulting judgment of the court.