

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-7-2006

# USA v. Ayala

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2065

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Ayala" (2006). *2006 Decisions.* Paper 1473.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1473

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-2065
_____

UNITED STATES OF AMERICA

v.

HAEN AYALA,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cr-00473)
District Judge:  Honorable Jan E. DuBois
_____

Submitted Under Third Circuit LAR 34.1(a)
February 14, 2006

Before:  SCIRICA, *Chief Judge*, BARRY and FISHER, *Circuit Judges*.

(Filed: March 7, 2006)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

I.

On December 16, 2004, Defendant Haen Ayala entered a conditional guilty plea to

one count of being a felon in possession of a weapon in violation of 18 U.S.C. § 922(g).

In accordance with the terms of his conditional guilty plea, Ayala now appeals the District Court's judgment of conviction and sentence, alleging that the District Court erroneously denied his motion to suppress evidence seized from him during a frisk on June 14, 2004.[1] We conclude that, in light of the totality of the circumstances, the police officers had reasonable suspicion to conduct the frisk. As a result, the District Court properly denied Ayala's motion to suppress. We will, therefore, affirm the District Court's judgment of conviction and sentence.

II.

As we write only for the parties, we set forth only those facts necessary to our analysis. On June 14, 2004, Officers Charles Harron and Michael Hooven of the Philadelphia Police Department were on patrol as part of "Project Safe Streets," an initiative designed to maintain a constant police presence in certain high-crime areas.

At approximately 4:30 p.m., an unidentified informant pulled his van alongside the officers' marked patrol unit. The informant was visibly upset and began "blurting things out" to the officers. After the officers instructed the informant to speak more slowly, he told the officers that someone on the corner of Ontario and C Streets had a gun and had threatened to shoot him. The informant described the assailant as a Hispanic man wearing an orange shirt and grey or black jeans. The officers testified that they had no

---

[1] We review the District Court's denial of a motion to suppress for clear error as to the underlying facts, and exercise plenary review of the District Court's application of the law to those facts. *United States v. Perez,* 280 F.3d 318, 336 (3d Cir. 2002).

reason to disbelieve the informant. Because the officers were more concerned with locating the suspect than in identifying the informant, they did not request any more information from the informant.

The officers drove about two blocks to the corner of Ontario and D Streets, where they observed a group of people at the corner of Ontario and C Streets.[2] As the officers pulled their car toward the group of people, all but Ayala, who was wearing an orange shirt and dark jeans, walked away. Because Ayala matched the informant's description of the assailant, the officers suspected that Ayala was armed and asked him to place his hands in the air as a safety precaution. They then performed a pat-down search and found a .25 caliber handgun in Ayala's left front pocket. The gun contained four live rounds, one of which was loaded in the chamber. The officers then placed Ayala under arrest.

III.

The issue on appeal is whether the officers were entitled to stop and frisk Ayala based on the informant's tip. Under *Terry v. Ohio*, 392 U.S. 1 (1968), and subsequent cases, "'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000) (quoting

---

[2]Officer Harron testified that they followed the informant's van to the corner of Ontario and D Streets. Officer Harron also testified that the informant pointed to the group standing at the corner of Ontario and C Streets and indicated that his alleged assailant was among them. Officer Hooven has no recollection of these events, but does not doubt Officer Harron's recollection.

3

*Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). An officer can also perform a limited search for weapons when he reasonably believes that the subject of an investigatory stop is armed and dangerous. *Terry*, 392 U.S. at 27.

Reasonable suspicion is "'a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.'" *Valentine*, 232 F.3d at 353 (quoting *Wardlow*, 528 U.S. at 123). Our decision must rest on "whether [the Officers] had the 'minimal level of objective justification' necessary for a *Terry* stop." *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). In evaluating whether the officers had reasonable suspicion, "we must consider 'the totality of the circumstances–the whole picture.'" *Sokolow*, 490 U.S. at 8 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

In order for an informant's tip to provide the basis for reasonable suspicion, that tip must be reliable both in its assertion of illegality and in its tendency to identify a determinate person. *See Florida v. J.L.*, 529 U.S. 266, 272 (2000) ("The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."). In addition, the reliability of the informant is relevant in an analysis of reasonable suspicion. *See Valentine*, 232 F.3d at 354.

Ayala argues that this case is analogous to *J.L.*, in which the Supreme Court held that an anonymous tip, without certain "indicia of reliability," was insufficient to support a *Terry* stop. In *J.L.*, an anonymous caller reported to police that a young African-

4

American man standing at a particular bus stop and wearing a plaid shirt was carrying a gun. *J.L.*, 529 U.S. at 268. Apart from this tip, the officers had no reason to suspect that the individual who met this description had engaged in any illegal activity. The Court held that the anonymous tip, which lacked indicia of reliability, could not justify the officers' stop and frisk of the suspect. *Id.* at 274.

Ayala also contends that the face-to-face encounter was unreliable because the officers lacked the information necessary to track down the informant if the tip was untruthful. However, in *Valentine*, we specifically rejected the argument that a tip was unreliable simply because the informant fled prior to apprehension of the suspect. *Valentine*, 232 F.3d at 355. The relevant question is not whether the officers could guarantee that they could track down the informant again, but rather whether the tip should be deemed sufficiently trustworthy in light of the totality of the circumstances. *Id.*

We have held that "a tip given face to face is more reliable than an anonymous telephone call." *Valentine*, 232 F.3d at 354-55 (citing *J.L.*, 529 U.S. at 276 (Kennedy, J., concurring) ("If an informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip.")). When a tip is given face to face rather than over the telephone, the officers can quickly confirm or disconfirm the tip, assess the informant's credibility as he spoke, and assess the informant's appearance. *Id.*

In this case, these considerations suggest that the officers had reason to find the informant credible. The officers' overall assessment of the informant's demeanor and appearance led them to believe that he was credible. The informant was speaking quickly

5

and was visibly shaken, which lent credibility to his claim that he had recently been threatened. Based on their face-to-face interaction with the informant, the officers reasonably concluded that the tip was credible.

The tip was also sufficient to identify Ayala as the suspect. The informant told the officers that a Hispanic man, wearing an orange shirt and dark jeans, had just threatened to shoot him. In addition to this physical description, the informant told the officers that the events had occurred only moments ago and only three blocks from the officers' location. Therefore, the officers had reason to believe that the suspect would be at the corner of Ontario and C Streets if they responded quickly. When they arrived at the corner of Ontario and C Streets, the officers found one person who matched the description provided by the informant. In light of the tip and the surrounding circumstances, the officers had a reasonable basis to believe that the man they searched was the man described by the informant.

In addition, the informant alleged direct knowledge of criminal activity–the suspect threatened to shoot him. Thus, the informant's tip clearly pointed to criminal activity. *United States v. Ubiles*, 224 F.3d 213, 218 (3d Cir. 2000).

Based on the totality of the circumstances, the officers had reasonable suspicion that Ayala was armed and dangerous, and their subsequent protective frisk of his person was therefore justified. As a result, the District Court properly denied Ayala's motion to suppress the gun seized from him during the search. Accordingly, we will affirm the judgment of conviction and sentence.

6