DONOVAN, J., dissenting:
{¶ 22} I disagree. "Because the strongest advocates of Fourth Amendment rights are frequently criminals, it is easy to forget that our interpretations of such rights apply to the innocent and the guilty alike." Illinois v. Gates, 462 U.S. 213, 290, 103 S.Ct. 2317, 2359-60, 76 L.Ed.2d 527 (1983) (BRENNAN, J., dissenting).
{¶ 23} In Florida v. Royer, the court found that during an investigative detention, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed. 2d 229 (1983).
{¶ 24} "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an immediate response. * * * A brief [investigative] stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Adams v. Williams, 407 U.S. 143, 145-146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616-617 (1972).
{¶ 25} Although police are given fair license to enforce the law for the protection of the community, we must also safeguard citizens from rash and unreasonable interference with privacy based on uncorroborated *1053 facts. In this instance, the fact that Pickett was wearing a red hooded sweatshirt simply did not justify his seizure and immediate pat down. A brief investigative stop may have been justified, but not what the police did here. The conduct of the police surely was not the least intrusive means available to verify and/or dispel suspicion of criminal conduct.
{¶ 26} Pickett was three blocks from the reported incident, outside a house which was not vacant, with an open door and light on. As the trial court noted, the 911 caller did not provide any detail on the suspect including his race, height or weight, only the fact that he wore a red hooded sweatshirt. The initial observation of Pickett by police did not yield any corroborating information, no gun was observed, and his conduct outside his vehicle cannot be characterized as suspicious. This case does not warrant a reversal pursuant to the jurisprudence of Terry v. Ohio or Florida v. J.L. As emphasized in J.L. , "the anonymous call concerning J.L., provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility." J.L. 529 U.S. at 271, 120 S.Ct. 1375, 146 L.Ed.2d 254. The same analysis is true here. The officers lacked reasonable individualized suspicion. In requiring that Pickett's seizure be based on at least some corroborated evidence of criminal conduct, the trial judge was faithful to the Fourth Amendment principle that law enforcement officers must reasonably suspect a person of criminal activity before they can detain and search him. We should be equally faithful to the Fourth Amendment protections afforded by Ohio and United States Constitution.
{¶ 27} I would affirm.