OPINION
Charles Kerns was indicted on two counts of possession of marijuana and one count of possession of psilocyn. After his motion to suppress was overruled, Kerns entered a no contest plea to the more serious marijuana charge in return for dismissal of the other two charges. The trial court found Kerns guilty and imposed a one year sentence which it stayed pending this appeal, wherein Kerns advances two assignments of error:
 1. THE TRIAL COURT ERRED IN OVERRULING APPEALANT'S (sic) MOTION TO SUPPRESS EVIDENCE, AS THE ARRESTING OFFICER LACKED PROBABLE CAUSE TO DETAIN APPELLANT AND SERARCH (sic) HIS VEHICLE.
 2. THE SERCH (sic) WARRANT'S (sic) SUBSEQUENTLY ISSUED FOR APPELLANT'S HOME AND VEHICLE WERE DEFECTIVE AND UNLAWFUL, AND EVIDENCE OBTAINED THEREBY SHOULD HAVE BEEN SUPPRESSED.
As it relates to the search of Kerns' home, the State contends that the second assignment of error is moot because the only count to which he pleaded no contest pertained to the marijuana found in the trunk of Kerns' car. Kerns does not argue to the contrary in his reply brief. As it relates to the search of his car, this assignment will necessarily be determined by our disposition of the first assignment. Accordingly, the second assignment is overruled.
Turning to the first assignment, the facts are as follows. Det. Martin Scherer of the Montgomery County Sheriff's Office was called from road patrol headquarters on Infirmary Road to the intersection of Diamond Mill and Farmersville — West Carrollton Roads by Sgt. Copher, his supervisor, at approximately 2:45 a.m. on June 7, 1999. Sgt. Copher told Det. Scherer that he had received an anonymous tip from "dispatch" that a purple Monte Carlo driven by Charles Kerns was en route to an address on Farmersville — West Carrollton Road, and that Kerns had a gun and possibly a hundred pounds of marijuana in the car. Det. Scherer proceeded to the intersection where he observed a purple Monte Carlo proceed south on Diamond Mill Road to Farmersville — West Carrollton Road and turn left onto that road without signalling the turn. Det. Scherer observed that the Monte Carlo had no front license plate. Sgt. Copher and Det. Scherer, in separate marked cruisers, stopped the Monte Carlo at approximately 2:50 a.m. Sgt. Copher and Det. Scherer approached the Monte Carlo. Det. Scherer noticed that the car door had been "punched" and the steering column had been "peeled," which indicated the car may have been stolen. The occupant, Kerns, produced an Ohio driver's license which established his identity. On the basis of the operator's license and conversation with Kerns, the officers determined that the car had not been stolen. Kerns was nervous, with fingers and hands trembling and shaking. He fumbled through his wallet and refused to make eye contact. Det. Scherer thought Kerns, having been stopped for traffic violations, was required to produce proof of insurance, which he was unable to do. Kerns permitted the officers to look for his insurance card and license plate in the interior of the car, but refused a specific request to look in the trunk. Because the officers intended to issue citations for the traffic violations, they removed Kerns from the car, patted him down, and put him in a cruiser. Det. Scherer had started to write the citations when Sgt. Copher called for a drug sniffing dog. The decision was based on the anonymous tip, Kerns' nervousness, and the officers' concern that any contraband in the car would escape detection if the dog were not employed. The dog eventually arrived with its handler and indicated drugs were in the car trunk. "(S)ometime after three o'clock," the handler called Det. Dennis Castle of the Montgomery County Sheriff's Office, and related "some information regarding the incident." Det. Castle was off-duty when he received the call from the handler and arrived at the scene of the stop at 3:45 a.m. At that point, the trunk was opened and suspected marijuana was observed in a cardboard box. At that time, Det. Scherer completed writing the traffic citations, Kerns was arrested, and his car was impounded. Based on these observations, Det. Castle obtained a search warrant for the car from which the marijuana was ultimately removed.
Other than finding that the stop was legitimate, the trial court provided no insight as to why it overruled Kerns' motion to suppress.
In essence, Kerns contends that the anonymous tip provided no legitimate basis for the officers' detaining him beyond the time reasonably necessary to issue citations for the missing license plate and unsignaled left turn, and that the officers unlawfully detained him beyond that reasonable period of time in order to determine through use of a drug sniffing dog whether his car contained drugs.
The State initially argues that up to the time that the drug sniffing dog indicated the presence of drugs in the car trunk, the officers had been engaged in reasonable investigative activities related to the traffic stop. These activities consisted of ascertaining Kerns' identity, determining whether the car was stolen, and helping Kerns locate his front license plate and insurance card. The State points out, and correctly so, that the police are not required to harbor a reasonable suspicion that drugs are present in a car to justify bringing a drug sniffing dog to the scene to sniff the car. The State also correctly observes that should the dog indicate the presence of drugs, the police are then furnished with probable cause to search the car . . . in this case, to open the trunk. However, without such a reasonable suspicion that the car contains drugs, the police are not permitted to detain a person until a drug sniffing dog is brought to the scene absent some other legitimate basis for detaining the person until the dog arrives. Hence, it is all important to the State's initial argument that the record demonstrate that Det. Scherer and Sgt. Copher were engaged in investigative activities related to the traffic stop through the time that the dog indicated the presence of drugs in Kerns' car trunk. The State has the burden of proof on this issue and, in our judgment, the record is inadequate to the task of demonstrating that the officers — who were required to pursue their traffic stop related investigation with diligence, State v. Carlson (1995), 102 Ohio App.3d 585,598-9 — continued to be engaged in traffic stop related investigative activity up to the time the dog gave them probable cause to open the car trunk.
At the latest, Kerns was stopped at 2:50 a.m.; "sometime after three o'clock," the dog handler contacted Det. Castle, presumably to inform him that the dog had detected drugs.
The problem we face as a reviewing court is our inability to go behind "sometime after three o'clock" to learn precisely when the handler called Det. Castle, and the lack of evidence as to the time it took Det. Castle to travel to the scene, where he said he arrived at 3:45 a.m. Furthermore, we don't know at what time, after 2:50 a.m., the handler arrived with the dog, the dog indicated the presence of drugs, or how much time elapsed between the dog indicating the presence of drugs and the handler calling Det. Castle. In other words, the dog could have indicated the presence of drugs anywhere between 2:50 a.m. and shortly after 3:00 a.m., which would support the State's argument, or between 2:50 a.m. and shortly before 3:45 a.m., which would weaken the State's argument. In our judgment and with no evidence to the contrary, the investigative activities conducted by the officers related to the traffic stop would not have consumed much time. Kerns identified himself with a driver's license. Kerns himself satisfied the officers that the car was not stolen without their having to resort to other sources of information. They searched the interior of the car for a license plate and proof of insurance. In short, we are constrained to conclude that the record does not sufficiently support the State's argument that Det. Scherer and Sgt. Copher continued to be engaged in activities related to the traffic stop when the dog indicated the presence of drugs. We believe it is particularly telling that Det. Scherer only completed the traffic citations after Det. Castle had arrived at the scene and the decision had been made to arrest Kerns and impound his car.
We are more impressed with the State's fallback argument: that when Sgt. Copher requested that a drug sniffing dog be brought to the scene, the officers had a reasonable articulable suspicion that drugs were in the car. All agree that, standing alone, the anonymous tip did not furnish the officers with a reasonable articulable suspicion that Kerns was transporting marijuana in the Monte Carlo. Florida v. J. L. (2000),120 S.Ct. 1375; Alabama v. White (1990), 496 U.S. 325. However, by the time Sgt. Copher requested the drug sniffing dog, the officers had more to go on than the anonymous tip. They observed a car matching the tipster's description turn onto Farmersville — West Carrollton Road, where there was an address to which the tipster said the Monte Carlo was headed. The driver of the Monte Carlo was Kerns, as the tipster had said it would be. Kerns demonstrated considerable anxiety when he was stopped, a remarkable reaction by someone stopped for minor traffic violations. Finally, although not articulated at the suppression hearing as a basis for calling for the dog, Kerns had given the officers permission to search the interior of his car for the license plate and evidence of insurance, but he had refused a specific request by the officers to search the trunk. All of these phenomena, observed by the officers, were consistent with the tip and lent reliability to it, such as to furnish them with a reasonable articulable suspicion to suspect the car contained drugs and justification to detain Kerns until a drug sniffing dog could confirm — or dispel — their suspicion. Id.
To be sure, the reasonable articulable suspicion that the car contained drugs permitted the officers to detain Kerns only for that length of time reasonably necessary to secure the presence of the drug sniffing dog to confirm or dispel their suspicion. United States v. Sharpe (1985),470 U.S. 675. The Supreme Court of the United States in Sharpe declined to create a bright line rule as to the permissible length of an investigative detention. Rather, the court stated the proper inquiry is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." Id. 686. Although the record before us could be more precise as to when each of the events described above occurred within the time span between 2:50 and 3:45 a.m., the record supports the conclusion that after the officers observed enough to support a reasonable articulable suspicion that the car contained drugs, they diligently pursued a means of investigation — summoning a drug sniffing dog — reasonably calculated to confirm or dispel that suspicion. Within the time span of 55 minutes, a certain amount of time was consumed immediately after 2:50 a.m. with investigative activities related to the traffic stop which resulted in the reasonable suspicion that drugs were in the car and the summoning of the drug sniffing dog. A certain amount of time prior to 3:45 a.m. was consumed by the handler's call to the off-duty Det. Castle and Det. Castle's journey to the scene. In short, the record supports a determination that once Det. Scherer and Sgt. Copher reasonably suspected Kerns' car contained drugs, they acted with reasonable dispatch to confirm or dispel their suspicion, and that the length of their detention of Kerns was comfortably within constitutional limits.
On this basis, we overrule the first assignment of error and affirm the judgment of the trial court.
 ____________ WOLFF, P. J.
BROGAN, J. and YOUNG, J., concur.