**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Wesley Dean STANDRIDGE,**
**Defendant–Appellant.**

**No. 04–5066.**

United States Court of Appeals,
Tenth Circuit.

Dec. 21, 2004.

Evin C. Danielson, Lucy O. Roberts, Asst. U.S. Attorney, Office of the United States Attorney, Tulsa, OK, for Plaintiff–Appellee.

Barry L. Derryberry, Asst. Federal Public Defender, Office of the Federal Public Defender, Tulsa, OK, for Defendant–Appellant.

Before BRISCOE, McKAY, and HARTZ, Circuit Judges.

**ORDER AND JUDGMENT***

McKAY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant was indicted with possession of a firearm and ammunition by a previ-

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

ously convicted felon, violation of 18 U.S.C. § 922(g)(1) (2000), and possession of an unregistered firearm, violation of 26 U.S.C. § 5861(d) (2000). Defendant filed a motion to suppress evidence based on a Fourth Amendment violation, which the district court denied. Defendant then entered a conditional plea and subsequently brought this appeal.

On the night of October 1, 2002, Defendant's car was parked in the shadows of a Texaco station, near a used-car lot. While on duty for the Oklahoma Highway Patrol, Trooper Rose spotted Defendant's car. Suspicious that a burglary was in progress, he decided to investigate. Trooper Rose circled the car, parked, and illuminated the vehicle with his bright lights. Upon doing so, he immediately recognized it as a vehicle for which he was to be on the lookout.

Approximately two hours before Trooper Rose happened upon Defendant's car he received a text message on his pager from the Bartlesville Police Department to be on the lookout for Defendant. The message stated that Defendant could be found in a 1999 maroon Mustang convertible with a tan top, license plate number WMB 207, accompanied by a trained attack Doberman and armed with a sawed-off shotgun. Additionally, Defendant was allegedly hallucinating because he was "strung out" on methamphetamine. The Bartlesville Police Department had not yet located Defendant in the city limits, but according to the family member who gave the tip, Defendant was possibly headed toward Tulsa.

Fearing for his safety, Trooper Rose exited his vehicle with his gun drawn and to his side, and walked toward the vehicle. Defendant was sleeping in the driver's seat, and a large Doberman was nearby inside the car. Trooper Rose woke Defendant by tapping on the window. Believing Defendant was armed, Trooper Rose told him to keep his hands on the steering wheel. Trooper Rose and Defendant engaged in a conversation wherein Trooper Rose asked Defendant if he had a gun, to which Defendant replied in the affirmative, explaining that he thought he was sitting on it. Defendant was asked to exit the vehicle, which he did. Thereafter, Trooper Rose patted down Defendant and briefly searched the interior of the car for the gun; he did not find one. Still concerned about his safety, Trooper Rose again inquired about the location of the gun, to which Defendant responded that it was probably in the trunk of his car. After twice obtaining consent and learning the special technique to open the trunk, Trooper Rose searched the trunk and found a loaded, sawed-off shotgun.

The question presented to this Court is whether Trooper Rose articulated a reasonable suspicion of criminal activity sufficient to justify his detention and search of Defendant. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The United States Supreme Court held in *Terry:*

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Id.* at 30. In determining whether the officer's conduct was justified under *Terry,*

courts are to judge the officer's conduct by an objective standard, viewing the incident from the officer's perspective, taking the totality of the circumstances in account. *United States v. Lang,* 81 F.3d 955, 965 (10th Cir.1996). In determining whether sufficient justification exists, courts consider all observations made by the officer in conjunction with each other and do not look at those reasons in isolation, as that "divide-and-conquer analysis" is precluded by *Terry. United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

The government presents two separate justifications for the officer's detention and search of Defendant: (1) belief that a burglary was in progress and (2) belief, based on the tip, that Defendant was armed and dangerous. Defendant attacks each basis separately, arguing that the detention and search of Defendant was legally impermissible on both grounds.

During the August 12, 2002, evidentiary hearing, Trooper Rose testified that his investigation of Defendant began when he noticed a car parked in the shadows of a gas station, near a used-car lot. According to Trooper Rose, this was unusual because, in his experience, cars were not usually parked there during the late evening hours. Trooper Rose believed a possible burglary was in progress. He then approached the car, parked a safe distance away, and illuminated the car with his bright lights. At that point, Trooper Rose recognized it as the car for which he was to be on the lookout. Trooper Rose determined that it was Defendant's car because it matched the description given by the Bartlesville police department. Based on these two observations, Trooper Rose testified that he feared for his safety and decided to search Defendant and the interior portion of the car for weapons.

Defendant's argument ignores the totality-of-the-circumstances approach required under *Terry* and its progeny and violates the prohibition on the divide-and-conquer analysis articulated by *Arvizu.* Defendant, in his opening brief, cites to case law that delineates the parameters as to when a *Terry* search is authorized based solely on an officer's suspicion regarding a possible burglary in progress. In addition, Defendant cites to *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), for the proposition that the anonymous tip, without more, was insufficient to justify the detention and search of Defendant and his vehicle. However, none of the cases cited by Defendant is analogous to the situation Trooper Rose encountered. In the present case, Trooper Rose was not relying solely on his belief that a burglary was in progress to justify his actions. Nor did Trooper Rose base his decision to stop and search Defendant on nothing more than an anonymous tip.[1] Trooper Rose relied on both in conjunction with each other.

Whether the suspected burglary or the anonymous tip were enough standing alone to justify Trooper Rose's actions is not before this Court. Based on Trooper Rose's articulated suspicion that a burglary was in progress because of Defendant's unusual conduct of parking his car in the shadows between a convenience station and a used-car lot during the late hours of the night (when both businesses were closed), coupled with the anonymous tip Trooper Rose received that Defendant could be armed and dangerous, Trooper Rose's detention and pat down of Defendant and search of the interior compart-

---

1. Because this case does not turn on whether the tip from an unidentified family member was anonymous, this Court assumes for purposes of this appeal only that the tip at issue was anonymous.

ment of his vehicle were reasonable and justified under *Terry*. The stop was justified at its inception. In addition, lending credence to the propriety of the search was Defendant's admitting to Trooper Rose that he was in possession of a weapon. At that point, Trooper Rose had the right, for officer protection, to locate the gun by patting down Defendant, searching the interior compartment of the vehicle, and seeking Defendant's consent to search the trunk.

AFFIRMED.