UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

RICKY PAGE REYNOLDS,
        *Defendant-Appellant.*

No. 00-4620

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CR-00-6)

Submitted: March 9, 2001

Decided: March 26, 2001

Before NIEMEYER and MOTZ, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

Lance M. Hale, LANCE M. HALE & ASSOCIATES, Roanoke, Virginia, for Appellant. Robert P. Crouch, Jr., United States Attorney, Craig J. Jacobsen, Assistant United States Attorney, Roanoke, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Ricky Page Reynolds appeals his conviction after a jury trial for possession with intent to distribute cocaine base and his resulting sentence of 360 months imprisonment. Finding no error, we affirm.

### I.

Reynolds first argues that 21 U.S.C. § 841(a)(1) (1994) is unconstitutional, because it lacks a jurisdictional element, prohibits the act of possession which is not "economic," and contains insufficient Congressional findings on the link to interstate commerce. In addition, Reynolds contends that the statute was unconstitutionally applied to his case, because there were no jury findings as to whether his crime had a substantial effect on interstate commerce.

This court has held that the Title 21 provisions prohibiting possession of controlled substances are not unconstitutional. Specifically, we noted that the Drug Act was "clearly tied" to interstate commerce and that Congress had made detailed findings that intrastate manufacture, distribution, and possession of controlled substances directly affected interstate drug trafficking. *United States v. Leshuk*, 65 F.3d 1105, 1112 (4th Cir. 1995). In addition, in *Leshuk*, we noted that the Drug Act was not unconstitutional as applied to the defendant's manufacturing conviction because, although the defendant's individual crime had only a de minimis effect on interstate commerce and although the statute did not contain a jurisdictional element, the fact that the regulatory drug statute itself did bear a substantial relation to commerce was sufficient. *Id.* Because Reynolds' arguments are identical to those raised in *Leshuk*, his claim must fail.

### II.

Next, Reynolds argues that the police lacked the reasonable suspicion necessary to detain him and that the execution of the investiga-

tory stop exceeded permissible constitutional limits. On November 12, 1999, Roanoke City police officers executed a search warrant for drugs and child pornography at Wade's Paint and Auto Body Shop. At the time the search warrant was executed, the business was closed. While officers were conducting the search, the telephone rang several times, and Officer Clingenpeel answered the phone. During one of the calls, a male voice asked for "Dave"; Clingenpeel told the caller that Dave was busy. The caller then told Clingenpeel to tell Dave that he had "28 grams for $1,000.00 and it's good s***." Clingenpeel pretended to ask "Dave" if he was interested and then advised the caller to bring the item over. The caller identified himself as "Lightning," stated that he would be over in "[j]ust a minute," and informed Clingenpeel that he would be arriving in a "green Tempo."

Less than five minutes later, Reynolds was dropped off in front of the store by a vehicle which appeared to be a green Ford Tempo, but was actually a Mercury Topaz, a car with the identical body as a Ford Tempo. Reynolds knocked on the door, and Clingenpeel told him to come in. Before Reynolds could open the door, the police dog inside barked, and the officers opened the door and yelled "Police, stop." Reynolds fled. The officers loosed the canine, pursued Reynolds, and apprehended him. A search of Reynolds revealed twenty grams of cocaine base packaged in three plastic baggies.

Reynolds contends that, in light of *Florida v. J.L.*, 529 U.S. 266 (2000), the anonymous phone call in his case did not provide reasonable suspicion for his detention and pat down. In *J.L.*, the police received an anonymous telephone tip that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. The police did not know the informant's name nor could they verify the informant's credibility. Apart from the tip, the police had no reason to suspect the man of illegal conduct. The Supreme Court held that the tip, without more, was insufficient to justify an investigatory stop and frisk. *Id.* at 270-72.

The situation in this case did not pose the same credibility problems as in *J.L.* First, the tip was not an anonymous call to the police. Instead, while the identity of the caller was unknown, the caller had no reason to believe he was talking to the police. Thus, the concern in *J.L.* regarding discouraging false accusations is not present. Sec-

ond, unlike in *J.L.*, the tip described future conduct which actually occurred, thereby demonstrating a certain degree of credibility not present in *J.L.* Specifically, the caller said he would be arriving at a closed business within a short time period in a green car, and within five minutes, he was in fact dropped off by a green car. Third, Reynolds fled when the police identified themselves, which can also be considered in determining whether reasonable suspicion existed. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Based on the foregoing, the officers had reasonable suspicion to stop Reynolds.

Reynolds next argues that, even if the officers had the necessary reasonable suspicion, their conduct transformed what began as an investigatory stop into a de facto arrest. Further, Reynolds argues that the police lacked probable cause to make an arrest and hence could not lawfully seize the cocaine base pursuant to a search incident to arrest.

The Supreme Court has stated that, when police officers make an investigative stop, they may take such steps as are "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985). During the course of the stop, police officers may conduct a reasonable search for weapons. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Moreover, it is not unreasonable for officers to employ drawn weapons to stop and frisk suspected drug traffickers. *United States v. Sinclair*, 983 F.2d 598, 603 (4th Cir. 1993).

Based on this authority, the stop of Reynolds was not unreasonable. The mere fact that officers were brandishing weapons did not transform a stop into an arrest. In addition, frisking suspected drug traffickers for weapons without engaging in an initial verbal inquiry is likely necessary to ensure the officers' safety. Finally, regarding the use of the dog, Reynolds has failed to show that this strategy was unreasonable. The dog was used to run down Reynolds while he was fleeing. Reynolds does not allege that the dog injured him or that the dog remained involved after Reynolds was apprehended. Accordingly, this too was reasonable. Because the officers possessed reasonable suspicion to stop Reynolds and because the stop was not converted into an arrest until the officers had recovered crack cocaine

from Reynolds during a protective pat down, the drug evidence was properly admitted.

### III.

Reynolds next argues that the trial court abused its discretion in admitting the results of tests showing that the substance found on Reynolds was crack cocaine and in denying Reynolds' motion for an acquittal, when the Government failed to establish a complete chain of custody. Proving chain of custody as a threshold requirement to the admission of evidence establishes that the item to be introduced is what it purports to be. *United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982). However, admission of evidence is not prevented just because there may be a missing link in its chain of custody "so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect." *Id.* Resolution of a chain of custody question rests with the sound discretion of the trial judge. *United States v. Ricco*, 52 F.3d 58, 61 (4th Cir. 1995).

Here, the only two people within the chain of custody who did not testify at trial had only minor involvement with the evidence limited to retrieving the evidence and placing it back in the vault. In addition, other officers testified that the normal procedures had been followed and that the chain of custody was properly documented. Moreover, there was no evidence or indication that the crack cocaine had been tampered with, and an officer testified at trial that the evidence appeared substantially the same as when he seized it from Reynolds. Accordingly, the Government satisfied the requirements for establishing a chain of custody, and the district court did not err either in admitting the crack cocaine and the certificate of analysis or in denying Reynolds' motion for acquittal.

### IV.

Next, Reynolds asserts that the district court erred in not awarding a reduction for acceptance of responsibility under *U.S. Sentencing Guidelines Manual* § 3E1.1 (1998). The district court's decision whether to grant a reduction for acceptance of responsibility is a factual determination that we review for clear error. *United States v. Miller*, 77 F.3d 71, 74 (4th Cir. 1996). The adjustment is not meant to

apply where the defendant has put the Government to its burden of proof at trial. USSG § 3E1.1, comment. (n.2). However, a defendant who goes to trial may nonetheless demonstrate acceptance of responsibility for his criminal conduct, if he went to trial to assert and preserve issues that do not relate to factual guilt, such as the constitutionality of a statute or the applicability of a statute to defendant's conduct. *Id.*

Reynolds argues that he accepted responsibility for his conduct, as exemplified by his confession, and that he only went to trial to preserve his appellate issues regarding the sufficiency of his indictment and the constitutionality of the search. However, Reynolds' actions did not show personal responsibility for his actions. First, in his motion to suppress his confession, counsel alleged that Reynolds "had no recollection of making any statement." Second, Reynolds twice moved to have his counsel removed because he allegedly was not putting sufficient effort into the case. When his motions were denied, Reynolds accused the judge of being "part of the group" and of running a "kangaroo courtroom," and stated that it was his intention to disrupt the courtroom and that the court would have to "cuff and gag" him. The district court ultimately removed Reynolds and tried him in his absence. Based on the foregoing, we find that the district court did not abuse its discretion in denying Reynolds an offense level reduction.

## V.

Reynolds next argues that his sentence of 360 months for possessing a "minimal" amount of drugs violated the Eighth Amendment's prohibition of cruel and unusual punishment because it was disproportionate to other drug sentences. However, we have held that the proportionality review is inappropriate for any sentence less than life without parole. *United States v. Lockhart*, 58 F.3d 86, 89 (4th Cir. 1995). Thus, we decline to review this claim.

## VI.

Finally, Reynolds challenges the denial of his motion to suppress his confession. We affirm the district court's decision on this claim based on the district court's reasoning. *United States v. Reynolds*, No.

CR-00-6 (W.D. Va. May 15, 2000). Based on the foregoing, we affirm Reynolds' conviction and sentence. We dispense with oral argument, because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*