**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 16, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALBERTO PEREZ-JACOME,

Defendant - Appellant.

No. 09-3054
(D. Ct. No. 2:06-20021-JWL-12)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

---

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-appellant Alberto Perez-Jacome was indicted in May 2009 along with several other members of a narcotics distribution organization based out of the Kansas City, Kansas area. He was convicted of multiple drug offenses and sentenced to 132 months' imprisonment. Mr. Perez-Jacome now appeals his conviction, alleging the

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court erred in denying his motion to suppress. We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

This case arises out of a forcible entry by law enforcement into Mr. Perez-Jacome's residence in Kansas City, Kansas on April 29, 2006. Drug Enforcement Agency ("DEA") agents were executing an arrest warrant for Hector Moreira, who had been indicted in a narcotics conspiracy. They began investigating Mr. Moreira and his narcotics distribution organization in May 2005.

Throughout the course of their investigation, DEA agents surveilled various addresses and vehicles in an effort to arrest Mr. Moreira. The agents also arranged for controlled purchases of narcotics from Mr. Moreira by confidential sources. After several failed attempts to apprehend Mr. Moreira, a new confidential source, Adam Israel, successfully arranged a buy from him on April 18, 2006. Mr. Israel made the purchase at an auto parts store at 18th Street and Central Avenue in Kansas City, Kansas from Mr. Moreira's cousin, Bayron Moreira. After the sale, agents followed Bayron to a residence at 1814 Bunker Avenue, Kansas City, Kansas. Also present at the residence was a maroon minivan registered to Mr. Perez-Jacome of that same address. At that time, there was no sign of Mr. Moreira at the residence.

On April 29, 2009, Mr. Israel advised agents that he had been to a house on Bunker Avenue off 18th Street three times in the past two or three days, had seen Moreira there, and believed Moreira was living there. Agents were able to match Mr. Israel's

description of the house to the residence at 1814 Bunker. Working together, DEA agents, Kansas City, Kansas police, and United States Marshals set up surveillance at the residence. Around 5:00 p.m. on April 29, 2009, the surveillance team saw Mr. Perez-Jacome and Mr. Moreira arrive at the home in Mr. Perez-Jacome's minivan. Both men entered the residence.

Agents immediately had Mr. Israel call and arrange a meeting with Mr. Moreira. Mr. Israel told Mr. Moreira that he had something for him, and Mr. Moreira told him to come to the Bunker Avenue residence, referring to it as "my house." Mr. Moreira met with Mr. Israel in the front yard, but reentered the home after he left.

After they observed Mr. Moreira reenter the home, the arrest teams forcibly entered the home by breaching the front door. Mr. Moreira was caught after fleeing out the back door. Mr. Perez-Jacome, who was standing at the kitchen stove, was ordered to the ground and handcuffed.

While inside the residence, police noticed narcotics in plain view on the kitchen table. Mr. Perez-Jacome was arrested, advised of his rights, and asked for consent to search his residence. He signed a Spanish-translated consent to search. The subsequent search revealed large quantities of cocaine, methamphetamine, marijuana, ecstasy, U.S. currency, and firearms.

Mr. Perez-Jacome was indicted on May 26, 2006, and filed a motion to suppress on October 3, 2006. The motion alleged that the agents violated Mr. Perez-Jacome's Fourth Amendment rights by entering his home without a search warrant. Mr. Perez-

Jacome sought suppression of all evidence and statements obtained as a result of the illegal entry. The government argued that the entrance into Mr. Perez-Jacome's home was lawful because they reasonably believed Mr. Moreira lived there and had a warrant for his arrest. The district court agreed with the government and denied Mr. Perez-Jacome's motion.

Ultimately, Mr. Perez-Jacome proceeded to trial and was convicted by a jury of conspiracy to possess with intent to distribute and to distribute methamphetamine, cocaine, and marijuana; possession with intent to distribute methamphetamine; possession with intent to distribute cocaine; and possession with intent to distribute marijuana. He was sentenced on February 17, 2009, to 132 months' imprisonment.

Mr. Perez-Jacome now appeals the district court's denial of his motion to suppress and his conviction.

## II. DISCUSSION

Mr. Perez-Jacome contends that the district court erred in holding that the entry into his home by DEA agents was authorized by their possession of an arrest warrant for another person under *Payton v. New York*, 445 U.S. 573 (1980). He argues that under *Steagald v. United States*, 451 U.S. 204 (1981), the agents were required to obtain a search warrant prior to entering his home.

When reviewing the denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in the light most favorable to the government. *United States v. Gay*, 240 F.3d 1222, 1225 (10th Cir. 2001). "We accept the district

court's factual findings unless clearly erroneous" and review its ultimate determination of reasonableness under the Fourth Amendment de novo. *Id.*

Decided just over one year apart, *Steagald* and *Payton* lay out the requirements for an arrest made in a home. In *Payton*, the Supreme Court noted that despite special constitutional protection for the home, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton*, 445 U.S. at 603. We have interpreted *Payton* to create a two-prong test for determining when an arrest warrant alone is sufficient to justify entrance into a home: officers must establish a reasonable basis for believing that the suspect "both (1) lived in the residence and (2) could be found within at the time of entry." *Valdez v. McPheters*, 172 F.3d 1220, 1225 (10th Cir. 1999).

Mr. Perez-Jacome maintains, however, that *Steagald* and not *Payton* is controlling. In *Steagald*, the Court held that when there is no reasonable basis for believing the suspect lives in the residence both a search and an arrest warrant are required "to render the . . . search reasonable." *Steagald*, 451 U.S. at 222. The Supreme Court based this holding on the weighty right "of presumptively innocent people to be secure in their homes from unjustified, forcible intrusions by the Government." *Id.* Nevertheless, the *Steagald* Court upheld the validity of *Payton*. *See id.* at 221. "Whether *Steagald* or *Payton* applies is resolved under the first prong of the *Payton* test." *Gay*, 240 F.3d at 1226.

The first prong of the *Payton* test requires that officers have a reasonable basis for

believing that the suspect, in this case Mr. Moreira, lived in the home. The district court found the agents' belief that Mr. Moreira lived at 1814 Bunker to be objectively reasonable. Based on the record, we agree.

Agents testified at the suppression hearing that the confidential source, Mr. Israel, informed agents that he had been to the home "approximately three times during the past two or three days" and that he "believe[d] that Hector Moreira was living at that residence now." Mr. Israel also told agents that Mr. Moreira referred to the Bunker Avenue residence as "my house" on April 29, 2009. Agents also observed Mr. Moreira enter the home multiple times on April 29, 2006. Finally, the agents' reliance on Mr. Israel's tip was reasonable because they were able to verify the information he provided by personal visits to and surveillance of 1814 Bunker, and they apparently had face-to-face discussions with Mr. Israel during which they could assess his reputation. *See Florida v. J.L.*, 529 U.S. 266, 270 (2000) (noting reputation of known informant can be assessed and informant can be held responsible if allegations turn out to be fabrications).

Because the first prong of the *Payton* analysis is met, the district court properly determined that *Payton*, and not *Steagald*, is controlling. *See Gay*, 240 F.3d at 1226. Furthermore, Mr. Perez-Jacome concedes that the agents reasonably believed that Mr. Moreira could be found within the home at the time they executed the arrest warrant, and thus the second prong of the *Payton* analysis is satisfied. Indeed, agents observed Mr. Moreira enter the home immediately before they executed the warrant. Therefore, both prongs of the *Payton* analysis are met. Because the entry into Mr. Perez-Jacome's home

was lawful under *Payton*, the district court properly denied Mr. Perez-Jacome's motion to suppress the evidence found in his home and his statement.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Mr. Perez-Jacome's motion to suppress.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge