*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
January 25, 2024

v

No. 357699
Oakland Circuit Court
LC No. 2021-276333-FH

CLAUDELL TURNER,

      Defendant-Appellant.

## ON REMAND

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

Defendant, Claudell Turner, was bound over for trial on two charges—possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*), and possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*)—after a warrantless seizure of drugs, currency, and a scale that were discovered following a *Terry*[1] pat-down for weapons on a traffic stop. Turner moved to suppress the evidence. The trial court denied the motion, holding that the search was reasonable and did not exceed the scope of *Terry*.

This case is before us pursuant to a second remand from our Supreme Court. We denied Turner's initial application for leave to appeal.[2] In lieu of granting leave to appeal, the Supreme Court remanded the case for our consideration as on leave granted.[3] On remand, we reversed the trial court's order, holding that the search was unconstitutional and the evidence seized must be suppressed. *People v Turner*, 342 Mich App 581; 995 NW2d 857 (2022) (*Turner III*), vacated by *People v Turner*, 511 Mich 992 (2023). The Supreme Court vacated our decision and remanded

---

[1] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

[2] *People v Turner*, unpublished order of the Court of Appeals, entered August 18, 2021 (Docket No. 357699) (*Turner I*).

[3] *People v Turner*, 509 Mich 854 (2022) (*Turner II*).

with instructions to consider whether the search of the interior of defendant's clothing was lawful under *Terry*. *People v Turner*, 511 Mich 992 (2023) (*Turner IV*).

We conclude that the limited pat-down for weapons did not support the seizure of an obviously nonthreatening object from Turner's pocket or his underwear or the shaking of his clothing to dislodge other nonthreatening items. We reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

We previously explained the pertinent facts as follows:

On December 4, 2020, an anonymous person reported to Oakland County Sheriff's Deputy Kevin Myers and Detective Hedrick that he saw a person named "Michael Sullivan" with a black pistol driving a newer, gray Jeep Grand Cherokee on the south side of Pontiac, Michigan. Sullivan was described as an African American male in his 30s with long dreadlocks. The anonymous tipster reported that Sullivan pulled out the black pistol "and was showing it while he was in his vehicle." The anonymous tipster did not report that Sullivan threatened him with the pistol. Neither Myers nor Hedrick had met the anonymous source before this encounter. Myers and Hedrick searched for Sullivan on the Law Enforcement Information Network (LEIN). Myers maintained that the LEIN inquiry confirmed the anonymous source's description of Sullivan and showed that Sullivan had a suspended driver's license and a warrant for his arrest related to a traffic offense.

Less than two hours later, Myers observed a newer, gray Jeep Grand Cherokee cross an intersection on the south side of Pontiac. Although Myers admitted that he was more than a full city block from the intersection at the time that he first observed the Jeep, he maintained that the Jeep "appeared to be going at a high rate of speed . . . ." Myers initially claimed that he could see that the driver of the Jeep matched Sullivan's description when the Jeep crossed the intersection. But Myers admitted on cross-examination that he was too far from the intersection to identify the driver of the Jeep.[1] Myers turned at the intersection, caught up to the Jeep, and initiated a traffic stop.[2] The patrol vehicle's dashcam captured the events.

As Myers and Hedrick approached Turner's vehicle, Turner had his hands in the air. Myers ordered Turner to roll down his window. Turner complied with the command. Myers asked Turner if he had any identification. Approximately six seconds later, Myers opened the driver's side door and ordered Turner out of the vehicle before he could produce his identification. Turner stepped out of the vehicle. Myers started handcuffing Turner as he was exiting the Jeep. Hedrick requested consent to search Turner's vehicle, but Turner refused. In response to a series of questions by Hedrick, Turner provided his full name, confirmed that he had a valid driver's license, stated that his license was inside the vehicle on the center console, and confirmed that the vehicle was a rental.[3] While Turner was responding to Hedrick's questions, Myers performed a pat-down search, reached

into Turner's left pocket, and withdrew some currency. Myers did not find any weapons in Turner's pockets. Turner offered to retrieve his identification from the vehicle, but the officers refused.

Rather than retrieve Turner's identification from the vehicle to confirm his identity, the officers took Turner behind their patrol vehicle and searched him further.[4] Myers felt "some type of hard like plastic" from the outside of Turner's pants with his right hand. With his left hand, Myers pulled the elastic waistband of Turner's pants away from Turner's body, looked inside of Turner's pants, and observed a black digital scale. While Myers and Hedrick were searching Turner, a third officer, Detective Brian Wilson, observed Turner's identification on top of the center console and retrieved it. Wilson approached the two officers with the identification as Myers was removing the scale from Turner's pants. Hedrick continued to search Turner. Wilson grabbed Turner's pants and underwear from the outside, shook them, and a clear, plastic baggie fell out of the bottom of his pant leg.[5]

---

[1] It is undisputed that Turner is an African American male in his 30s and that, at the time of the incident, he had long, braided hair.

[2] During the preliminary examination, Myers maintained that the reason he initiated the traffic stop was to investigate the firearm allegation. At an evidentiary hearing, Myers initially testified that he initiated the traffic stop because the Jeep was speeding. But on cross-examination, Myers maintained that the reason he stopped the Jeep was to investigate the firearm allegation.

[3] It is undisputed that Turner had a valid driver's license and did not have any warrants for his arrest.

[4] This portion of the search is not within the camera's view.

[5] The baggie contained two smaller baggies—one containing a substance that tested positive for cocaine and one containing a substance that tested positive for heroin. While out of view of the camera, Hedrick can be heard on the audio asking Myers, "Was the scale in there too?" Myers responded, "Oh yeah. I dug that out of his boxers." Shortly thereafter, the dashcam video depicts both officers turning off their microphones before searching Turner's vehicle. [*Turner III*, 342 Mich App at 587-589 & n 1-5.]

---

The central issue before us is the legality of the search. The trial court opined that the search was reasonable and did not exceed the scope of *Terry* because Myers "observed a bulge in Defendant's pants and testified that he did not know if the object in the Defendant's pants was a weapon." In *Turner III*, a majority of this Court discussed the legal parameters of a *Terry* stop and related pat-down search, *Turner III*, 342 Mich App at 591-592, and ultimately concluded that the

search exceeded the legitimate scope of the *Terry* pat-down and the warrantless seizure of the nondangerous items was not authorized by the plain-feel exception set forth in *Minnesota v Dickerson*, 508 US 366; 113 S Ct 2130; 124 L Ed 2d 334 (1993). *Turner III*, 342 Mich App at 598. Judge MARKEY dissented, opining that the search was constitutional in light of the fact that Myers saw a bulge in defendant's pants that appeared to have a pointy end and Myers reasonably believed that bulge to be a weapon. *Id*. at 615-617 (MARKEY, J., dissenting). Judge MARKEY disagreed with the majority's reliance on the plain-feel exception, which she did not believe was implicated in this case. *Id*. at 618-619.

The prosecution sought leave to appeal *Turner III*. The Supreme Court vacated *Turner III* and remanded to this Court to analyze the facts under the rules governing a *Terry* search:

> In the present case, the prosecution argues that *Terry* justified searching the interior of the defendant's clothing without reference to the "plain feel" exception. A *Terry* search requires only reasonable suspicion and is lawful if the search is "necessary for the discovery of weapons which might be used to harm the officer or others nearby" and is "reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." The Court of Appeals majority mentioned this standard but never applied it and ultimately analyzed the issue only under the "plain feel" exception. Accordingly, we vacate the Court of Appeals' judgment and remand this case to the Court of Appeals to address this issue. [*Turner IV*, 511 Mich at 993 (citations omitted).]

## II. ANALYSIS

"Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Pagano*, 507 Mich 26, 31-32; 967 NW2d 590 (2021), citing US Const, Am IV, and Const 1963, art 1, § 11. In recognition of this right, the government must typically obtain a warrant before conducting a search. *People v Swenor*, 336 Mich App 550, 564-565; 971 NW2d 33 (2021). Warrantless searches and seizures are "presumptively unreasonable and, therefore, unconstitutional," *People v Hughes (On Remand)*, 339 Mich App 99, 110; 981 NW2d 182 (2021), unless conducted pursuant to one of the narrow exceptions to the general rule requiring a warrant, *Swenor*, 336 Mich App at 565.

As the majority explained in *Turner III*, the United States Supreme Court created one such exception in *Terry*:[4]

> A *Terry* stop allows an officer to conduct a brief, warrantless seizure when the officer has at least a reasonable suspicion of criminal activity based on articulable facts. *Terry*, 392 US at 20-27. A *Terry* stop can be justified by an anonymous tip if the tip is sufficiently corroborated. *Florida v JL*, 529 US 266, 270; 120 S Ct 1375; 146 L Ed 2d 254 (2000); *Pagano*, 507 Mich at 33. But "*Terry* stops are limited in both scope and duration." *Johnson*, 509 Mich at 539. "The scope of the

---

[4] The Supreme Court did not take issue with *Turner III*'s articulation of the rule from *Terry*, only the majority's failure to apply the rule. *Turner IV*, 511 Mich at 992.

detention must be carefully tailored to its underlying justification." *Florida v Royer*, 460 US 491, 500; 103 S Ct 1319; 75 L Ed 2d 229 (1983). During a *Terry* stop, an officer may "make reasonable inquiries aimed at confirming or dispelling his suspicions." *Minnesota v Dickerson*, 508 US 366, 373; 113 S Ct 2130; 124 L Ed 2d 334 (1993) (quotation marks and citation omitted).

If an officer has a reasonable suspicion that a person is armed and dangerous, the officer may conduct a limited pat-down search for weapons during a *Terry* stop. *Terry*, 392 US at 24; *People v Champion*, 452 Mich 92, 99; 549 NW2d 849 (1996). But "*Terry* strictly limits the permissible scope of a patdown search to that reasonably designed to discover guns, knives, clubs, or other hidden instruments that could be used to assault an officer." *Champion*, 452 Mich at 99. "Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or indeed, any search whatever for anything but weapons." *Ybarra v Illinois*, 444 US 85, 93-94; 100 S Ct 338; 62 L Ed 2d 238 (1979). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." *Adams v Williams*, 407 US 143, 146; 92 S Ct 1921; 32 L Ed 2d 612 (1972). *Terry* does not authorize an officer to conduct "a general exploratory search for whatever evidence of criminal activity he might find." *Terry,* 392 US at 30. [*Turner III*, 342 Mich App at 591-593.]

Turner does not dispute that the police had a legally sufficient basis to conduct the traffic stop, order him to step out of the vehicle, and conduct a limited *Terry* pat-down search. The focus of his claim of error is the propriety of the search of his person and, more specifically, the intrusion into his clothing to remove items.

The officers conducted a *Terry* stop to determine whether Turner was Michael Sullivan, who was believed to be armed. Thus, the scope of the detention and search was limited to verifying Turner's identity and whether he was armed. See *Terry*, 392 US at 19, 27; *Royer*, 460 US at 500. Myers testified that, as he was at the driver's side window of the vehicle, Turner twice reached between the center console and his right leg. Myers stated that he was unable to see Turner's hand while he made these movements. These movements prompted Myers to order Turner to step out of the vehicle so he "could detain him at that time." As Turner stepped out of the vehicle, Myers "noticed a foreign object that didn't look right in the crotch area of [Turner's] sweatpants." The object "almost had like a point," and Myers believed it might have been the handle or butt of a small pistol or handgun, especially in light of the information conveyed by the anonymous tipster. Upon viewing the bulge, Myers handcuffed Turner and patted down the exterior of Turner's clothing. During the pat down, Myers felt a bulge near Turner's left pants pocket that he was unable to identify. Myers candidly admitted that he did not know if the bulge was a dangerous weapon, and provided no testimony that it felt like one. Extending the search beyond the exterior of Turner's clothing, Myers reached into Turner's pocket and seized the cash located therein. As Myers continued to pat the outside of defendant's pants, he felt "some type of hard plastic . . . ." Once again, Myers extended the search beyond the exterior of Turner's clothing: he pulled the elastic waistband of Turner's pants away from Turner's body, looked inside of Turner's pants, and observed a black digital scale. Although it was immediately apparent to Myers that the "hard plastic" he felt in Turner's pants was not a dangerous weapon when he saw the scale, Myers reached into Turner's pants and seized the scale.

-5-

We find that Myers's search exceeded the bounds of a permissible *Terry* frisk. An officer may "conduct a carefully limited search of the outer clothing . . . in an attempt to discover weapons which might be used to assault him" during a *Terry* stop. *Terry*, 392 US at 30. But the search must be limited to that purpose; the pat down cannot be used as a search for other evidence of criminal activity. *Id*. at 29-30. An officer may remove any weapons discovered during a limited *Terry* pat-down search. *Id*. at 29-30. But *Terry* does not authorize a search for or the seizure of items that pose no evident risk of danger. Myers did not limit his search to a pat down of Turner's exterior clothing looking for weapons. Myers extended his search by placing his hands in Turner's pockets and inside his pants to conduct "a general exploratory search for whatever evidence of criminal activity he might find." *Terry,* 392 US at 30. Under the totality of the circumstances, we find that Myers exceeded the scope of *Terry* when he extended the search inside Turner's clothing and seized the cash and scale. *Terry,* 392 US at 30-31. See also *Dickerson*, 508 US at 378 (holding that "the officer's continued exploration of [the defendant's] pocket after having concluded that it contained no weapon" exceeded the sole justification of a *Terry* pat-down to protect the officer and others nearby."); *Champion*, 452 at 105-106 (holding that "an object felt during an authorized patdown search may be seized without a warrant if the item's incriminating character is immediately apparent, i.e., if the officer develops probable cause to believe that the item felt is contraband before going beyond the legitimate scope of the patdown search.").[5]

Wilson's discovery and seizure of the drugs likewise cannot withstand constitutional scrutiny. Once Myers satisfied himself that neither of the suspicious bulges were weapons that could be used against himself or others during the remainder of the *Terry* stop, the search should have concluded. Wilson did not have probable cause to open Turner's pants and underwear and shake them in order to dislodge any objects that may be contained therein. Wilson did not articulate that he felt a weapon or any other object whose contour or mass made its identity immediately apparent. A limited *Terry* pat-down is not intended to be used as a tool to try to discover evidence of crime. *Adams,* 407 US at 146.

Because the police conduct in this case violated the constitutional prohibition against unreasonable searches and seizures, "any evidence derived from that seizure must be suppressed

---

[5] The dissent acknowledges that "[t]here was evidence that Deputy Myers observed and fully identified the scale upon pulling the waistband of defendant's sweatpants away from his body." Despite Myer's visual confirmation that the "hard plastic" he felt was not a dangerous weapon, and the fact that Turner's hands were secured behind his back at the time, the dissent contends that Myers was constitutionally permitted to extend the exterior pat-down into a full search by reaching into Turner's pants and removing the scale "in order to get a full 360-degree view of the object" to confirm its identify and ensure it could not be used as a weapon. We disagree. The identity of the object was not immediately apparent to Myers during the exterior pat down. Myers provided no testimony to establish that he believed that the object he felt was a weapon or that he had probable cause to believe that the object was contraband; he candidly admitted that he had no idea what it was when he felt it. See *Champion*, 452 at 105-106. Based on the totality of the circumstances, the officers did not have probable cause to believe that the object in Turner's pants was contraband until after the object was extracted from Turner's pants and it was examined further. This search exceeded the legitimate scope of the *Terry* pat-down.

-6-

as fruit of the poisonous tree." *People v Shabaz*, 424 Mich 42, 65; 378 NW2d 451 (1985). Accordingly, the trial court erred by denying Turner's motion to suppress the evidence obtained as a result of the search.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Sima G. Patel