KING, Circuit Judge,
dissenting:
I write in dissent because there was an ample basis — both particularized and objectively reasonable — for the suspicion that Powell, when he was patted down by Officer Shelby, may have been armed and dangerous. I therefore disagree with my distinguished colleagues and emphasize three essential points. First, there is a material distinction between an “investigatory stop” and a “patdown” (or “frisk”) for weapons. Second, the “caution data” resulting from the computer check on Powell’s invalid driver’s license (revealing that Powell had been previously arrested for armed robbery) was alone sufficient to justify Officer Shelby’s actions. And, third, viewed in their totality, the relevant circumstances more than justified Shelby’s patdown of Powell for weapons.
A.
Pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the *190 reasonable-suspicion standard applies to both an investigatory stop and a patdown for weapons. On the one hand, to justify an investigatory stop, there must be reasonable suspicion “that criminal activity may be afoot.” Terry, 392 U.S. at 30, 88 S.Ct. 1868. On the other hand, to support a patdown for weapons, there must be reasonable suspicion that a suspect “may be armed and presently dangerous.” Id. These variances in the reasonable-suspicion standard owe to the fact that the predicate circumstances and ultimate goals of the two types of intrusions are different. An investigatory stop is for the purpose of detecting possible criminal activity, while a patdown for weapons is conducted solely for the safety of the police officers and others. Indeed, the consequences of either of these situations panning out into fact are distinct and, particularly in the patdown situation, fraught with danger. As the Supreme Court has explained, “[t]he purpose of [a patdown for weapons] is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.” Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); see also Terry, 392 U.S. at 29, 88 S.Ct. 1868 (“The sole justification of the search in the present situation is the protection of the police officer and others nearby....”).
In Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the Supreme Court laid out the distinction between a Terry investigatory stop and a Terry patdown for weapons. After ruling that an investigatory stop may not be conducted solely on the basis of an anonymous tip that a person is armed, the Court explained that “the requirement that an anonymous tip bear standard indicia of reliability in order to justify a stop in no way diminishes a police officer’s prerogative, in accord with Terry, to conduct a protective search of a person who has already been legitimately stopped.” J.L., 529 U.S. at 274, 120 S.Ct. 1375. Recognizing the difference between a Terry stop and a Terry patdown for weapons, the Court thus stressed the importance of the officer’s right to act in “ ‘protection of himself and others’ ” when he is already lawfully on the scene and in the presence of a suspect. Id. at 270, 120 S.Ct. 1375 (quoting Terry, 392 U.S. at 30, 88 S.Ct. 1868); see also Pennsylvania v. Mimms, 434 U.S. 106, 112, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (concluding that there was “little question” that officer was justified in conducting patdown for weapons after initiating lawful traffic stop, ordering suspect to exit vehicle, and noticing bulge in suspect’s jacket).
When a police officer’s life is on the line, common sense tells us that he should sooner be reasonable in his suspicion that a suspect may be armed and dangerous than in suspecting that a passerby is up to no good. The risk of dismissing a suspicion that a suspect may be armed is inherently perilous to arresting officers. As a result, the officers in this case were entitled to take reasonable steps to protect themselves and others after they received confirmation that Powell may be armed, even if that evidence might not have been sufficient for an initial Terry stop.[1]
*191 B.
1.
Although the requirement of reasonable suspicion for an investigatory stop or a patdown for weapons calls for more than a mere hunch, reasonable suspicion is a lower standard than probable cause, and considerably lower than a preponderance. See United States v. Massenburg, 654 F.3d 480, 485 (4th Cir.2011). In this case, the “caution data” regarding Powell, standing alone, satisfied that standard.
It is of little moment that, prior to the radio broadcast regarding the caution data on Powell, this traffic stop had been a cooperative one. See ante at 185. Officer Shelby confirmed that he asked Powell to exit the vehicle and that he conducted the patdown “for officer safety,” after being advised of the Powell caution data involving armed robbery. J.A. 48.[2] With evidence that Powell may have been dangerously armed in the past, Officer Shelby made a “rational inference[ ]” that Powell may have been armed and presently dangerous, and Shelby acted — as he was entitled to do — to protect himself and others. See United States v. Branch, 537 F.3d 328, 336 (4th Cir.2008). In this context, it makes sense, as Judge Wilkinson has well explained, for the courts to “give due weight to common sense judgments reached by officers in light of their experience and training” and “credit the praetical experience of officers who observe on a daily basis what transpires on the street.” United States v. Perkins, 363 F.3d 317, 321 (4th Cir.2004) (internal quotation marks omitted) (citing Illinois v. Wardlow, 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).
Furthermore, the government attorney’s statement at oral argument that the “caution data” alone was insufficient to establish reasonable suspicion for the patdown of Powell constitutes a thin reed for the majority — because the question we face is not factual, but legal. See United States v. Rodriguez, 433 F.3d 411, 415 n. 6 (4th Cir.2006) (recognizing that court not bound by party’s concession on legal issue). I simply disagree with the government on this point, and instead find myself in agreement with the district court.[3] Put succinctly, I am loath to conclude that a police officer who has lawfully stopped a vehicle is not entitled to subject a passenger to a protective patdown for weapons after learning that, in the past, that passenger had been charged with an armed robbery.
2.
Notwithstanding my view of the sufficiency of the “caution data” concerning Powell, we are obliged to resolve the reasonable suspicion issue by considering the totality of the relevant circumstances. See *192 United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). In so doing, the facts underlying Officer Shelby’s patdown of Powell for weapons persuade me that the district court’s decision to deny suppression was entirely proper. Indeed, this case is informed by the Supreme Court’s decision in Pennsylvania v. Mimms, where police officers stopped a vehicle with an expired license plate and asked the driver to step outside the car. See 434 U.S. 106, 107, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). When one of the officers noticed a “large bulge” under the driver’s jacket, he patted the driver down in fear that the bulge may be a weapon, which it was. Id. The Court held that the patdown was justified. Id. at 112, 98 S.Ct. 330.
The facts of this case are even more compelling. Powell had previously been arrested for armed robbery, and the police radio broadcast of the computer data specifically advised all three officers present of the Powell “caution data.” Additionally, Powell indicated that he had a valid license but presented the officers with a suspended license, and he was a passenger in a vehicle where neither the driver nor the other passenger possessed a valid license. As a result, the officers were entitled— using their common sense — to believe that Powell was being untruthful when he purported to have a valid license, and that he engaged in “less than law abiding conduct.” See United States v. Pack, 612 F.3d 341, 361 (5th Cir.2010) (observing that “licenses are usually suspended for less than law abiding conduct”). The foregoing circumstances, taken together, provided an objectively reasonable basis for Officer Shelby’s suspicion that Powell may have been armed and dangerous.[4] Consequently, there was ample justification for Officer Shelby’s patdown of Powell for weapons, thus ensuring the safety of the officers and the vehicle occupants.
I respectfully dissent.

. Each of the decisions relied on by the majority are materially distinguishable from this case, in that none focused on the legality of a patdown alone. We ruled in Foster and Sprinkle that officers’ knowledge of the suspects’ prior criminal involvement in drug activity failed to meet the reasonable-suspicion standard necessary for an investigatory stop. See United States v. Foster, 634 F.3d 243, 248 (4th Cir.2011); United States v. Sprinkle, 106 F.3d 613, 617 (4th Cir.1997). Massenburg concerned whether reasonable suspicion existed to justify an investigatory stop and frisk of a pedestrian, and Digiovanni involved an *191 investigation into drug trafficking activity that exceeded the scope of the original traffic stop. See United States v. Massenburg, 654 F.3d 480, 485-88 (4th Cir.2011); United States v. Digiovanni, 650 F.3d 498, 507-10 (4th Cir.2011).

. Citations herein to "J.A. _” refer to the contents of the Joint Appendix filed by the parties in this appeal.

. In ruling on the reasonable suspicion issue following an evidentiary hearing, the able and experienced district judge explained that
there’s certainly no issue in this case that the stop was legitimate, that requesting the individuals to get out of the vehicle was legitimate. At that point, knowing that the defendant had involvement in a prior charge, if not conviction of armed robbery, a pat-down was appropriate. The officers had no obligation to verify whether in fact it was a conviction that stuck. So the pat-down was appropriate.
J.A. 89.

. It is unnecessary to consider against Powell the evidence that, after the patdown decision was made, he sought to evade Shelby’s pat-down for weapons by dropping to his knees and then seeking to flee. Cf. United States v. Sprinkle, 106 F.3d 613, 619 (4th Cir.1997) (concluding that suspect’s intervening illegal acts during impermissible patdown provided independent grounds for arrest). Neither, of course, have I considered the fact that a 9mm Ruger handgun, as well as drugs, were then seized.