NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4659
_____

UNITED STATES OF AMERICA

v.

DWAYNE PARKER,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 09-cr-00806-001
(Honorable Cynthia M. Rufe)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 5, 2012

Before:  SCIRICA, AMBRO and VAN ANTWERPEN, *Circuit Judges*.

(File: March 16, 2012)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Dwayne Parker was charged with illegal possession of a firearm under 18 U.S.C. §

922(g).  He moved to suppress the firearm as the fruit of an illegal search, arguing the

police lacked reasonable suspicion to conduct the vehicle stop that led to the weapon's

discovery.  The federal trial court denied the motion to suppress.  We will affirm.

**I.**

Around 4 a.m. on October 22, 2009, after receiving an anonymous 911 call,[1] Philadelphia police dispatch issued two radio calls one minute apart reporting a robbery in progress and a person with a gun. The two calls stated the robbery was occurring at 300 West Glenwood Avenue, which the police regard as mid-level crime area, and identified the robbers as black males driving a silver Cadillac.[2] Within one minute of receiving the calls, Officers Lewis and Binns arrived at 300 West Glenwood Avenue, where they spotted a silver Cadillac Escalade SUV turn left from Third Street. The officers could not determine how many people were in the car because of its tinted windows. There was no other traffic in the area. When Lewis and Binns pulled behind the Cadillac in their marked patrol car with their overhead lights off, it double-parked in front of the gate of a closed auto garage. Based on his experience, Lewis believed this action might be an avoidance tactic to prevent the police from running the license plate or to avoid attention by allowing the police to drive by. Lewis and Binns pulled behind the Cadillac and turned on their overhead lights; other officers also arrived at the scene.

While approaching the vehicle, Lewis and Binns observed Dwayne Parker, one of the five men in the car, reaching and looking downward and making sudden movements. After the men were removed from the car, Lewis looked inside the vehicle and spotted a firearm on the floor where Parker had been seated. Parker was arrested for weapons

---

[1] The police repeatedly attempted to contact the complainant, but only reached voicemail.
[2] Officer Binns recalled that the call identified the car as a Cadillac Escalade, while another officer remembered that the call specified an SUV. The other two officers testifying, including Officer Lewis, recalled that the call specified a silver Cadillac.

violations. He was later indicted with a count of felon-in-possession of a firearm, 18

U.S.C. § 922(g), and taken into federal custody. After being advised of his *Miranda*

rights, he admitted possession of the gun.

After a hearing on whether the initial stop of the Cadillac was constitutional, the

District Court denied Parker's motion to suppress the physical evidence. *United States v.*

*Parker*, No. 09-cr-806, 2010 WL 4456919 (Nov. 5, 2010). The court held that, although

the anonymous call alone was insufficient, the totality of the circumstances provided

reasonable suspicion for the stop, which did not violate the Fourth Amendment. *Id.* at

\*4-\*7. Parker subsequently pled guilty, reserving his right to appeal the denial of the

suppression motion. After sentencing, he filed a timely appeal.[3]

## II.

The Fourth Amendment forbids "unreasonable searches and seizures." U.S.

Const. amend. IV. Under *Terry v. Ohio*, 392 U.S. 1 (1968), the Fourth Amendment

permits police to "conduct a brief, investigatory stop when the officer has a reasonable,

articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119,

123 (2000). Reasonable suspicion requires more than an "inchoate and unparticularized

suspicion or 'hunch,'" *id.* at 123-24 (quoting *Terry*, 392 U.S. at 27), and must be

examined under the "totality of the circumstances" to determine whether the officer had a

"particularized and objective basis for suspecting legal wrongdoing," *United States v.*

---

[3] The District Court exercised jurisdiction under 18 U.S.C. § 3231. We exercise jurisdiction over the appeal under 28 U.S.C. § 1291. We review the denial of a motion to suppress for clear error with respect to factual findings and *de novo* with respect of questions of law. *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006).

*Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). Although reasonable suspicion is a "somewhat abstract" and "elusive concept," *id.* at 274, we have identified several relevant factors to be weighed in evaluating the totality of the circumstances, including (1) presence in a high-crime area, (2) presence on a street at a late hour, (3) nervous, evasive behavior, (4) behavior that conforms to officers' specialized knowledge of criminal activity, (5) geographic and temporal proximity to the scene of the alleged crime, and (6) the number of people in the area, *United States v. Goodrich*, 450 F.3d 552, 561 (3d Cir. 2006); *United States v. Brown*, 448 F.3d 239, 251 (3d Cir. 2006). In weighing these factors, we consider only facts known to the officers before the stop. *Goodrich*, 450 F.3d at 559.

When reasonable suspicion is based on information obtained from an anonymous source, the tip must exhibit "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop" without further independent investigation. *Alabama v. White*, 496 U.S. 325, 332 (1990). Such indicia include whether (1) the tip was made face-to-face, (2) the informant can be held responsible for false allegations, (3) the tip provides "inside information" not available to every observer, (4) the informant recently witnessed the alleged criminal activity, and (5) the tip predicts later behavior that the police may confirm. *Brown*, 448 F.3d at 249-50. But the "bare report of an unknown, unaccountable informant who neither explained how he knew about the [crime] nor supplied any basis for believing he had inside information" is alone insufficient to create reasonable suspicion. *Florida v. J.L.*, 529 U.S. 266, 271 (2000). Nor is it adequate that the tip accurately describes a suspect's location and appearance,

4

since "[t]he reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id*. at 272.

As the government concedes, in this instance the anonymous tip the Philadelphia police received lacked "sufficient indicia of reliability" to alone provide reasonable suspicion for the stop. The 911 call from an unidentified informant who did not state the basis of her knowledge possessed none of the factors that indicate reliability.[4]

But this is not an instance where the police relied only on an anonymous tip to justify an investigative stop. *Cf. J.L.*, 529 U.S. at 268 ("The question presented in this case is whether an anonymous tip . . . is, *without more*, sufficient to justify a police officer's stop. . . ." (emphasis added)). As the District Court noted, after the police responded to the radio call, they observed several factors that we have held establish reasonable suspicion. It was 4:00 a.m. and the area had a reputation for mid-level crime. More significantly, the police arrived only a minute after the call and found a vehicle matching the flash description at the address identified, with no other cars around. *See Goodrich*, 450 F.3d at 562-63 (holding that the discovery of the suspect seven minutes after a call within two blocks of the alleged crime scene, with no other occupied vehicles present, "militat[es] strongly in favor of the validity of the stop"). Moreover, the suspects

---

[4] In *J.L.*, the Court noted that "[t]he facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability," and observed that it would not apply the same standard to reports of a bomb, or to searches in airports or schools where privacy expectations are diminished. 529 U.S. at 274. Accordingly, in certain severe or emergency situations, an anonymous tip alone may be sufficient to establish reasonable suspicion to conduct a stop.

engaged in what the police, based on their experience and specialized knowledge, regarded as nervous, evasive behavior when they double-parked in front of a closed business after the police cruiser pulled behind them. While Parker urges there might have been innocent reasons for the Cadillac to park, "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Arvizu*, 534 U.S. at 277; *see also United States v. Valentine*, 232 F.3d 350, 356 (3d Cir. 2000) ("In many cases the Supreme Court has found reasonable suspicion based on acts capable of innocent explanation."). The issue is not whether each action in isolation might be innocent, but whether, when taken together, they provide a particularized and objective basis for suspecting wrongdoing that would eliminate "a substantial portion of innocent [persons]." *United States v. Mathurin*, 561 F.3d 170, 174 (3d Cir. 2009).

We conclude that this standard was met here. Viewing these factors together as the "totality of the circumstances," we determine the police had reasonable suspicion to conduct the investigatory stop of the Cadillac. Although the anonymous 911 call alone may not have been sufficiently reliable to justify the stop, all the factors we have previously identified as indicating reasonable suspicion were present, to greater or lesser degrees. Weighed collectively, they establish the police officers had reasonable suspicion, and the stop was constitutionally valid.

## III.

For the foregoing reasons, we will affirm the District Court's denial of Parker's motion to suppress. We will affirm the judgment of conviction and sentence.

6